388 So.2d 222 (1980)
James B. RIDENOUR and M. Jane Ridenour, His Wife, Appellants,
v.
Albert Stanley SHAREK and Government Employees Insurance Company, Etc., Appellees.
No. 78-1646/T4-168.
District Court of Appeal of Florida, Fifth District.
June 27, 1980.
Rehearing Denied September 11 and September 12, 1980.
Bruce W. Jacobus of Ferrell & Jacobus, Melbourne, for appellants.
*223 W. Marvin Hardy, III, of Gurney, Gurney & Handley, P.A., Orlando, for appellees.
SHARP, Judge.
The appellants claim the trial court should have directed a verdict for the plaintiffs on the question of whether Ridenour's medical and hospital expenses exceed the $1,000.00 threshold limit imposed by the applicable section of Florida's No-Fault Insurance Statute.[1] We agree with appellant that the record conclusively establishes their right to recover medical and hospital costs. The trial court directed a verdict for appellants on the issue of liability and allowed the question of damages to go to the jury on a special verdict form.[2]
James B. Ridenour filed a law suit against the appellees, Albert Stanley Sharek and his insurer, Government Employees Insurance Company, following an automobile accident in which Sharek rear-ended Ridenour's vehicle. The testimony established that shortly after the accident Ridenour developed a tremor in his arms, which gradually became worse. He consulted his family doctor, Dr. Storey, and a specialist in neurology, Dr. Scott. Dr. Scott admitted Ridenour to a hospital in May 1974, and ran a battery of tests to determine conclusively the cause of the tremor. The total amount of medical bills incurred by Ridenour through that point was $1,858.50. The appellees did not dispute the amount nor the reasonableness of the bills.
Ultimately, Dr. Scott diagnosed Ridenour as having Parkinson's disease. There was conflicting medical testimony as to whether or not Parkinson's disease could be caused by a trauma such as Ridenour suffered in the rear-end collision. The jury found for the appellees on that issue, and we cannot disturb their findings. Keith v. Amrep Corporation, 312 So.2d 234 (Fla. 1st DCA 1975).
However, both medical witnesses testified that it was reasonably necessary and proper in order to determine that the tremor was not related to the accident, to refer Ridenour to the specialist, and have him hospitalized for a battery of diagnostic tests. The attorney for Ridenour asked Dr. Scott:
Would you go to the time that you put him in the hospital? At that time, was it reasonably necessary to hospitalize Mr. Ridenour, to examine him and run tests on him to rule out the possibility of any traumatic injury he might have received as a result of this accident?
Dr. Scott answered:
I felt there were other possibilities, certainly not uppermost in my mind  problems which could possibly be related to the history of the accident.
The attorney asked:
Did you hospitalize him to make a determination as to these other factors by tests?
Dr. Scott replied:
Hospitalized him really to determine the basis of the symptoms. This testimony was *224 not countered nor disputed by any other evidence.
This case is remarkably similar to Banyas v. American Mut. Fire Ins. Co., 359 So.2d 506 (Fla. 1st DCA 1978). In Banyas, a plaintiff sued for damages following an automobile accident and appealed a judgment for the defendant. In the accident the plaintiff sustained a blow to his chest. He was hospitalized twice after complaining of chest pains, and ultimately was referred to a cardiologist who performed diagnostic tests. The specialist concluded that the plaintiff had a heart problem not related to the accident. However the treating physician who referred the plaintiff to the specialist testified:
I felt that it was necessary to distinguish between the pain, whether or not it was from the automobile accident or whether it was due to his heart condition... Primarily that with knowing he had a heart problem and knowing that he had been involved in an automobile accident, I felt that it was necessary to distinguish heart disease from trauma. .. . I felt I had to know whether I was treating trauma or whether or not I was dealing with cardiac problems.
359 So.2d at 507.
Here, as in Banyas, the medical testimony conclusively established that the medical and hospital expenses incurred were reasonably necessary to determine whether or not the accident caused the difficulty, and to allow the commencement of proper medical treatment. We reverse the judgment below and remand for a new trial on the issue of damages in light of Banyas.[3]
REVERSED.
CROSS and ORFINGER, JJ., concur.
NOTES
[1] Section 627.737(2), Fla. Stat. (1971): In any action of tort brought against the owner, registrant, operator, or occupant of a motor vehicle with respect to which security has been provided as required by §§ 627.730-627.741, or against any person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease arising out of the ownership, maintenance, operation, or use of such motor vehicle only in the event that the benefits which are payable for such injury under § 627.736(1)(a) [or which would be payable for such injury under § 627.736(1)(a)] or which would be payable but for any exclusion or deductible authorized by §§ 627.730-627.741 exceed one thousand dollars or the injury or disease consists in whole or in part of permanent disfigurement, a fracture to a weight-bearing bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of a bodily function, or death... .
[2] The special verdict and the jury's response were as follows: Has the plaintiff, James B. Ridenour, incurred reasonable and necessary medical expenses in excess of $1,000.00 as a result of the collision of October 17, 1973? Answer: No. Has the plaintiff, James B. Ridenour, sustained a permanent injury within reasonable medical probability or permanent loss of a bodily function, as a result of the collision of October 17, 1973? Answer: No.
[3] § 59.35, Fla. Stat. (1979).