990 So.2d 554 (2008)
Elena PLANA and John Plana, Appellants,
v.
Eduardo SAINZ and NAP Dispositions, Inc., Appellees.
No. 3D06-1512.
District Court of Appeal of Florida, Third District.
June 18, 2008.
Rehearing Denied September 23, 2008.
*555 Arthur J. Morburger, Miami, for appellants.
Adams, Adams & Baca, and Jaime J. Baca, Miami; Shelley Ray Senecal, for appellees.
Before GREEN, ROTHENBERG, and SALTER, JJ.
ROTHENBERG, J.
Elena ("Elena") and John Plana (collectively "the plaintiffs") appeal from an adverse final judgment entered following the jury's zero verdict, and from the order denying their motion for a new trial in their personal injury action against Eduardo Sainz and NAP Dispositions, Inc. (collectively "the defendants"). The plaintiffs assert that the trial court abused its discretion by denying their motion for new trial where the jury failed to award them expenses incurred for diagnostic testing to determine whether Elena's complained-of injuries were as a result of the subject accident. Because whether the diagnostic tests performed on Elena were reasonable and necessary was a disputed issue of fact, and it was the jury's prerogative to weigh the credibility of the witnesses, we conclude that the trial court did not abuse its discretion in denying the plaintiffs' motion for a new trial.
On October 10, 2000, Elena was a passenger in a vehicle that was involved in an automobile accident with a pick-up truck driven by Mr. Sainz and owned by NAP Dispositions, Inc. Prior to trial, the defendants admitted liability, and therefore, the issues at trial were whether the subject accident caused Elena's injury and damages, if any.
At trial, contrary to Elena's deposition testimony, it was revealed that she was involved in a prior automobile accident in September 1999, and following that accident, she complained of pain to her lower back and left knee. Dr. Tejeiro, the orthopedist who examined Elena on the day of the subject accident in 2000, testified that based upon Elena's complaints and the medical history she provided, which did not include the prior accident and injuries, he ordered several diagnostic tests, including x-rays, an ultrasound, and an MRI, which confirmed that Elena had a tear to the meniscus of her left knee. While Dr. Tejeiro initially opined that Elena's complaints in 2000 were related to the 2000 accident, he explained that this diagnosis *556 was a result of Elena's failure to inform him of her prior accident in 1999, and that unless the patient tells him about a prior problem, he has to assume the complaints are related to the subject accident.
The defendants' expert, Dr. Lang, an orthopedic surgeon, testified that the tear to Elena's meniscus was a horizontal tear; horizontal tears are degenerative; if Elena hit the dashboard, as she claimed, the tear would have been a vertical tear, not a horizontal tear; and in his opinion, the tear to the meniscus pre-dated the subject accident. Dr. Lang's testimony, therefore, was consistent with the MRI findings by Dr. Mendez, who opined that the meniscus tearing was degenerative. Dr. Lang also noted that Elena initially did not tell him about her prior accident, and when confronted, she denied any prior problems with her left knee. However, when he studied Dr. Scideri's report, he learned that, prior to the subject accident, Elena had complained about recurring problems with her left knee, which included pain and swelling. Dr. Lang also questioned whether the CT Scan of Elena's back was the proper test to perform because it shows bone, not soft tissue, and stated that an MRI should have been ordered instead. Lastly, Dr. Lang testified that it was very unlikely that Elena's knee struck the dashboard of the car.
Dr. Aptman, who conducted a neurological examination of Elena, testified that he found no neurological deficits, and that Elena's failure to tell Dr. Tejeiro about the 1999 accident affected Dr. Tejeiro's evaluation and treatment. Dr. Aptman also testified that Elena told him that she did not have any direct trauma as a result of the subject accident. When asked about whether the diagnostic tests that were performed on Elena were reasonable and necessary, he stated that most of them were unnecessary, not performed properly, and misinterpreted.
Although the defendants admitted liability, the jury found that Mr. Sainz's negligence was not the legal cause of Elena's injury, and entered a zero damage award. The plaintiffs filed a motion for new trial on damages, arguing that, at a minimum, they were entitled to recover the medical expenses they incurred for medical examinations and diagnostic testing that were reasonably necessary to determine whether the subject accident caused Elena's injury.
We conclude that the jury's finding on the issue of causation is not against the manifest weight of the evidence. Thus, we do not disturb that finding. See Martin v. Chapman, 780 So.2d 929, 930 (Fla. 5th DCA 2001). The issue remaining is, therefore, whether there was record evidence to support the jury's verdict of zero damages even though medical tests and diagnostic tests were performed.
It is generally true that even when a jury finds that the plaintiff was not injured as a result of the subject accident, the plaintiff is entitled to recover those expenses incurred for medical examinations and diagnostic testing reasonably necessary to determine whether the subject accident caused the injuries. See Sparks-Book v. Sports Auth., Inc., 699 So.2d 767, 768 (Fla. 3d DCA 1997); Blanford v. Polk County, 410 So.2d 667, 669 (Fla. 2d DCA 1982); Peek v. Stevens, 395 So.2d 617, 617-18 (Fla. 5th DCA 1981); Ridenour v. Sharek, 388 So.2d 222, 224 (Fla. 5th DCA 1980).
However, the Second District in State, Department of Transportation v. Rosario, 782 So.2d 927 (Fla. 2d DCA 2001), essentially distinguished Sparks-Book when it upheld the jury's verdict of zero damages. Regarding the diagnostic testing, the Rosario court found that because of Rosario's *557 pre-existing back problems, his lack of candor with his treating physicians regarding his pre-existing back problems, his lack of candor in answers to interrogatories, the videotape depicting his capabilities, and the conflicting medical opinions as to the issue of causation, the jury could conclude that Rosario suffered no damages as a result of the subject accident. Id. at 928.
The instant case and Rosario are strikingly similar. Both plaintiffs had pre-existing injuries that they failed to disclose to their treating physicians and to opposing counsel; they both demonstrated a lack of candor; there were videotapes depicting their capabilities; the jury awarded no damages based upon a finding that the plaintiff had suffered no damages as a result of the subject accident; and each claimed on appeal that, at a minimum, they were entitled to an award as to expenses incurred for diagnostic testing. Id.
We, therefore, find Rosario persuasive, and conclude that based upon Elena's prior lower back and left knee injuries, her failure to disclose the prior complaints and prior accident to her treating physicians, and the conflicting expert testimony as to whether the diagnostic tests were necessary or appropriate, the jury's award of zero damages to the plaintiffs was supported by the manifest weight of the evidence. We, therefore, distinguish the instant case from the holding in Sparks-Book, which addresses none of these factors.
We additionally conclude that, because the instant plaintiffs failed to object to the verdict form and the trial court's instructions, they waived any objection to the zero damage award. The verdict form the plaintiffs agreed to provided as follows:
1. Was the negligence on the part of defendant, Eduardo Sainz, a legal cause of injury to plaintiff, Elena Plana?
 YES...... NO......
If your answer to question 1 is NO, your verdict is for the defendants, and you should not proceed further, except to date and sign this verdict for[m] and return it to the courtroom. If your answer to question 1 is YES, please answer questions 2 and 3. By answering the following questions you will determine the damages, if any that Elena Plana sustained as a result of the incident in question.
The jury cannot be faulted for doing exactly what it was instructed to do. As the verdict form instructed, when the jury found that the subject accident was not the legal cause of Elena's injury, it proceeded no further, except to sign the verdict form. Because counsel for the plaintiffs agreed to the wording of the verdict form, instructing the jury to go no further if it concluded that Mr. Sainz's negligence was not the legal cause of Elena's injury, the plaintiffs are precluded from asserting that the zero damage award entered by the jury was error. See Beverly Health & Rehab. Servs., Inc. v. Freeman, 709 So.2d 549, 551 (Fla. 2d DCA 1998) (holding that the plaintiff "waived the issue of nominal damages by agreeing to the verdict form that instructed the jury to skip the damages issue if its answer to the causation question was `no'"); Papcun v. Piggy Bag Disc. Souvenirs, Food & Gas Corp., 472 So.2d 880, 881 (Fla. 5th DCA 1985) (citing to well-established Florida law that "failure to object to a verdict form regarding defects not of a constitutional or fundamental character constitutes a waiver of such defects").
We additionally note that the verdict form used in Sparks-Book differs from the verdict form used in the instant case. In Sparks-Book the question the jury was asked to resolve was the following: "Was the negligence on the part of the Defendant, *558 The Sports Authority, Inc., the legal cause of any loss, injury, or damage to Plaintiff Lila Sparks-Book?" 699 So.2d at 768 (emphasis added). In the instant case, the verdict form limited the jury's consideration to injury only in answering the question, and the jury was instructed to go no further if its answer to this question was "No."
Because counsel for the plaintiffs agreed to the verdict form that instructed the jury to go no further (and thus not consider any loss or damages) if it concluded that Mr. Sainz's negligence was not the legal cause of Elena's injury, we conclude that the argument raised on appeal was not preserved below.
Affirmed.
SALTER, J., concurs.
GREEN, J., (dissenting).
Under well-established Florida caselaw and contrary to the majority's holding, the appellants/plaintiffs are entitled to a new trial on damages based upon the undisputed evidence that their diagnostic medical bills were reasonably necessary to determine the extent of the injuries caused by this accident. Moreover, there is no factual or legal basis for the majority's holding that appellants waived this issue by acquiescing to the verdict form. I therefore must dissent.

I.
Elena Plana, and her husband John, sued Eduardo Sainz and NAP Dispositions, Inc. (collectively "appellees"), for damages arising out of an automobile accident involving Sainz's negligent operation of a NAP-owned pick-up truck. Elena was a passenger in a car that collided with Sainz's pick-up truck. Elena sought damages for personal injuries, past and future medical expenses, pain and suffering, and lost wages. Her husband's claim was solely for loss of her consortium.
The appellees admitted liability but contested damages. At issue in this case was whether Elena's injuries were caused by this accident.
During the trial, Elena claimed that she suffered, among other things, a contusion and bruise to both her left knee and lower back when her knee impacted the car's dashboard. She testified that immediately following the accident she was driven to a clinic for a medical examination of her injuries. Dr. William Tejeiro examined Elena and observed that she had a "[d]ash-board contusion to the left knee." According to Dr. Tejeiro, Elena "had a black and blue mark over her knee with swelling, and there were signs of a meniscus tear" to her left knee. As a result of his observation, Dr. Tejeiro ordered several diagnostic tests. The jury received evidence of the costs of these tests. The reasonableness of the performance of at least some of these diagnostic tests was not disputed by the defense. Dr. Tejeiro opined that Elena's injuries were the result of the subject accident.
The defense presented the testimony of Dr. Lang who acknowledged that the MRI showed a tear to Elena's left knee meniscus. However, Dr. Lang testified that such a tear, without hip injury, was unusual. Dr. Lang opined that the tear was non-traumatic and merely "degenerative" in nature, associated with the aging process.
At the end of the trial, the jury answered, "No" to the question: "Was the negligence on the part of the defendant Eduardo Sainz, a legal cause of injury to plaintiff, Elena Plana?" A zero-damage verdict was returned in favor of appellees and against defendants. The Planas timely moved for a new trial on the issue of damages arguing that even if the jury found that Elena Plana's injuries were not *559 the result of this accident, at a minimum, she was entitled to recover the medical expenses incurred for diagnostic testing which were undisputedly necessary to determine whether or not the accident caused her injuries. The trial court denied the motion and entered a final judgment in accordance with the jury's verdict. This appeal ensued.
The appellants assert that, as a matter of established law, they are entitled to a new trial on the issue of damages. They are entirely correct.

II.
In this case, causation was the only disputed issue at trial. Plaintiff posited that her knee injury was caused by the accident. Defendants posited that the injuries were either pre-existing, degenerative, or both. The appellees admitted liability and the jury rendered a defense verdict in their favor, finding that the accident was not the cause of the Elena's injuries.
The jury's finding on the issue of causation is not against the manifest weight of the evidence and I agree that it should not be disturbed. See Martin v. Chapman, 780 So.2d 929, 930 (Fla. 5th DCA 2001). That notwithstanding and contrary to the majority's assertion, the propriety or need for some of the diagnostic tests was not disputed at trial. In fact, at trial, Dr. Aptman, the defense neurologist expert, testified as follows:
Q. [Defense Counsel]: I also provided you with some copies of some nerve studies that were done?
A. Yes, sir.
Q. And I want to ask you  first of all, do you believe that these tests were appropriate in this situation?
A. You made a global statement. Some of them were appropriate, and some of them were not appropriate.
(Emphasis added). The defense thus clearly conceded that some of the plaintiff's diagnostic tests were reasonable and necessary. This is an admission that it was appropriate to submit Plana to diagnostic testing. There was no conflict on this issue. The necessity of the diagnostic testing, therefore, was not a feature of the trial.
There was unrefuted evidence that Elena's left knee did impact the dashboard in this accident; she had objectively visible black and blue contusions to this knee after the impact; she sought and obtained medical diagnostic treatment immediately after the accident and incurred reasonable expenses for such treatment; and some diagnostic tests were appropriate. Therefore, even if the jury ultimately concluded that she had a pre-existing knee condition, which was the cause of her claimed injuries, there was no basis for the jury to decline to award her at least the costs of those medical diagnostic tests deemed reasonably necessary to determine whether the accident, in fact, caused her injuries. Leal v. Waterproofing Sys. of Miami, Inc., 812 So.2d 473 (Fla. 3d DCA 2002)(even where there was sufficient evidence for the jury to find that plaintiff's neck injuries pre-existed the accident, the trial court erred in denying his motion for directed verdict on the issue of recovery for diagnostic bills); Sparks-Book v. Sports Auth., Inc., 699 So.2d 767 (Fla. 3d DCA 1997)(where it was undisputed that paramedics were called to the scene of the accident and the plaintiff was taken to the emergency room for x-rays, the plaintiff was at a minimum entitled to recover those medical expenses incurred for diagnostic testing to determine whether accident caused her injuries); Blanford v. Polk County, 410 So.2d 667 (Fla. 2d DCA 1982)(although jury could have found that plaintiff was not injured as a result of accident based upon his prior written *560 statement to that effect he was at least entitled to recovery of undisputed medical expenses incurred for diagnostic testing purposes); Peek v. Stevens, 395 So.2d 617 (Fla. 5th DCA 1981)(although there was a definite controversy as to whether all medical expenses were incurred as a result of the accident, there was no question that the diagnostic medical bills were directly attributable to accident, therefore, the jury's zero verdict cannot stand); Ridenour v. Sharek, 388 So.2d 222 (Fla. 5th DCA 1980)(new trial ordered under no-fault statute where it was undisputed that medical and hospital expenses incurred for diagnostic purposes were reasonably necessary); Banyas v. Am. Mut. Fire Ins. Co., 359 So.2d 506 (Fla. 1st DCA 1978)(undisputed diagnostic tests incurred immediately following accident to determine whether or not accident was cause of chest pain were recoverable). Notwithstanding this well-established body of Florida caselaw, the majority opinion concludes, in part, that we must affirm the final judgment and order denying new trial based upon the Second District's decision in Florida Department of Transportation v. Rosario, 782 So.2d 927 (Fla. 2d DCA 2001). The majority's reliance on Rosario is misplaced.
In Rosario, the plaintiff's vehicle was struck from the rear by a Department of Transportation ("DOT") vehicle. Rosario claimed he sustained back injuries as a result of the accident. The trial court granted summary judgment on the issue of liability in Rosario's favor and the case proceeded to trial on the issues of causation and damages.
At trial, Rosario introduced medical evidence that he sustained a permanent back injury as a result of the accident. The defense, on the other hand, introduced evidence that Rosario had pre-existing back problems and that he had failed to disclose this history to his treating physician and to DOT during its discovery efforts. The jury found DOT's negligence was not the legal cause of Rosario's damages and that Rosario did not suffer a permanent injury as a result of this accident. The trial court granted Rosario a new trial on the issue of damages on the grounds that "it was undisputed that the Plaintiff did suffer some damages from this collision" and that the verdict was against the manifest weight of the evidence. Rosario, 782 So.2d at 928.
On DOT's appeal of the new trial order, Rosario argued that in accordance with our holding in Sparks-Book, at a minimum, he was entitled to an award to reimburse his expenses for diagnostic testing and treatment for the aggravation of his pre-existing back condition, notwithstanding the jury finding of no causation. 782 So.2d at 928. The Second District summarily rejected this argument without distinguishing our Sparks-Book decision or, for that matter, its own decision in Blanford, 410 So.2d at 667, on which Sparks-Book was based. An unwritten distinction in an opinion is not a distinction. I can only assume the Rosario court rejected this line of cases because, sub silentio, it found that either: 1) Rosario never immediately sought diagnostic treatment contrary to his argument on appeal, or 2) there was conflicting evidence among the experts as to whether Rosario's diagnostic testing was necessary. However, neither of these factual scenarios is present in our case.[1] Thus, the majority's conclusion that the Rosario holding controls the outcome of this appeal is, at best, illogical and wrong. More importantly, however, the majority's holding here creates intra-district *561 conflicts with our earlier Sparks-Book decision.

III.
As a second basis for its affirmance, the majority opinion asserts that the appellants waived any error in the zero-damages diagnostic expense verdict by acquiescing to the verdict form. Again, the majority is simply wrong under established law.
There is no basis in the law for the majority's conclusion that the appellants are precluded from challenging the jury's zero-damage award because they accepted the verdict form that did not permit an award for past medicals if no causation was found. As the appellants correctly point out, in Sparks-Book v. Sports Auth., Inc., 699 So.2d at 768 n. 1, we held that a zero damage verdict was contrary to the manifest weight of the evidence, yet we nevertheless expressly approved this very same verdict form that stated: "Was the negligence on the part of Defendant, The Sports Authority, Inc., the legal cause of any loss, injury or damage to Plaintiff Lila Sparks-Book?"
The appellants' acquiescence to this standard negligence verdict form did not waive their right to move for new trial based on the fact that the verdict was against the manifest weight of the evidence. In our Scarfone v. Magaldi, 522 So.2d 902, 903 (Fla. 3d DCA 1988) decision, which cited to Ruth v. Sorensen, 104 So.2d 10, 15 (Fla.1958), we specifically rejected the defendant's argument that the plaintiff waived or invited the error by failing to move for a directed verdict on the no-fault issue, by requesting a no-fault jury instruction, and by agreeing to a special interrogatory jury verdict form on the no-fault issue. 522 So.2d at 904. As we further expressly noted: "None of these actions waived the plaintiff's right to file a motion for new trial on the ground that the verdict was against the manifest weight of the evidence; nor did any of these actions invite the trial court to commit the error complained of in this appeal." Id.
In apparent disregard of our pronouncements in Scarfone, the majority relies upon Beverly Health & Rehabilitation Services, Inc. v. Freeman, 709 So.2d 549, 551 (Fla. 2d DCA 1998), and Papcun v. Piggy Bag Discount Souvenirs, Food & Gas Corp., 472 So.2d 880, 881 (Fla. 5th DCA 1985). These decisions are inapplicable to this case. In Beverly Health & Rehabilitation Services, the court brought to the parties' attention the issue of the verdict's inconsistency and plaintiff did not request a reinstruction. In our case, the appellants do not claim that the jury's verdict is inconsistent. This is not an issue here. The issue is whether the zero-damages verdict is against the weight of the evidence. Here, as in Cowart v. Kendall United Methodist Church, 476 So.2d 289, 291 (Fla. 3d DCA 1985), appellate review of the zero-dollar damages award may be tested for inadequacy in the light of the evidence of the case raised, as here, only by an appropriate (and required) motion for new trial on these grounds.
Finally, the Papcun decision provides no support for the majority's holding. In Papcun, the court considered the merits of the new trial motion, and affirmed, finding that the verdict was not against the manifest weight of the evidence. The error in the verdict formnot the inadequacy of the awardwas also raised as an issue on appeal; the court concluded that this issue could not be considered without an appropriate objection to the form of the verdict. Papcun does not stand for the proposition that a party who accepts a verdict form waives all errors in the jury's verdict.
In conclusion, and for all of the foregoing reasons, the majority's decision is *562 against controlling precedent. The appellants are entitled to a new trial on damages and the judgment under review should be reversed.
NOTES
[1] Obviously, however, if my assumption is erroneous, there exists intra-district conflict between the Second District's Blanford and Rosario decisions