POLSTON, C.J.
We review the decision of the Second District Court of Appeal in Philip Morris USA, Inc. v. Douglas, 83 So.3d 1002, 1011 (Fla. 2d DCA 2012), in which the Second *422 District certified the following question of great public importance:[1]
DOES ACCEPTING AS RES JUDICA-TA THE EIGHT PHASE I FINDINGS APPROVED IN ENGLE V. LIGGETT GROUP, INC., 945 So.2d 1246 (Fla. 2006), VIOLATE THE [ENGLE DEFENDANTS’] DUE PROCESS RIGHTS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION?
Applying our decision in Engle, we answer the certified question in the negative and approve the result of the Second District’s decision affirming the general verdict for the plaintiff based on strict liability. However, as explained below, we disapprove the Second District’s rejection of negligence as a basis for the general verdict because the Second District’s analysis requires causation instructions and findings beyond those required by Engle. We also decline the defendants’ request to revisit our decision in Engle.
I. BACKGROUND
A. Engle and the Phase I Findings
In 1994, smokers and their survivors filed a class action against cigarette companies and industry organizations for damages allegedly caused by smoking-related injuries. See R.J. Reynolds Tobacco Co. v. Engle, 672 So.2d 39, 40 (Fla. Bd DCA 1996) (Engle I). The Engle class sought damages “for certain diseases and medical conditions allegedly contracted [because of] addiction to smoking cigarettes containing nicotine produced by the [Engle ] defendants.” Id. The complaint alleged causes of action for “strict liability in tort, fraud and misrepresentation, conspiracy to commit fraud and misrepresentation, breach of implied warranty of merchantability and fitness, negligence, breach of express warranty, [and] intentional infliction of mental distress.” Id.
The Engle defendants filed an interlocutory appeal challenging the class certification. Id. In Engle I, the Third District affirmed certification with the class defined as follows:
[All Florida citizens and residents], and their survivors, who have suffered, presently suffer or have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine.
Id. at 40, 42.
On remand, the trial court developed a three-phase trial plan. In Phase I, the jury was to decide issues common to the entire class, including general causation, the Engle defendants’ common liability to the class members for the conduct alleged in the complaint, and the class’s entitlement to punitive damages. See Engle v. R.J. Reynolds Tobacco, 2000 WL 33534572, at *12 (Fla. 11th Cir.Ct.2000) (Engle F.J.), rev’d, Liggett Group, Inc. v. Engle, 853 So.2d 434 (Fla. 3d DCA 2003) (Engle II), approved in part and quashed in part, Engle, 945 So.2d 1246. If the jury-ruled against the Engle defendants in Phase I, the same jury would then decide individual causation and damages for the class representatives and the amount of punitive damages to be awarded to the entire class in Phase II. Id. Then, in Phase III, different juries would decide individual causation and damages for each class member.[2] Id. After all Phase III trials *423 were complete, the trial court would divide the punitive damages among the successful class members. Engle II, 853 So.2d at 442.
Consistent with the trial plan’s focus on common liability in Phase I, the class action jury was not asked to find brand-specific defects in the Engle defendants’ cigarettes or to identify specific tortious actions. Instead, in instructing the jury, the Engle trial court explained that it was to determine “all common liability issues” for the class concerning “the conduct of the tobacco industry.” Though the Engle defendants requested that the trial court use a verdict form that would have required the jury to include narrative explanations identifying specific defects and tor-tious actions, the trial court rejected it, and they did not provide the court with an alternative form.
During Phase I, proof submitted on strict liability included brand-specific defects, but it also included proof that the Engle defendants’ cigarettes were defective because they are addictive and cause disease. The Engle defendants defended this defect theory, including presenting testimony that cigarettes were not addictive and were not proven to cause disease and that they had designed the safest cigarette possible. Similarly, arguments concerning the class’s negligence, warranty, fraud, and conspiracy claims included whether the Engle defendants failed to address the health effects and addictive nature of cigarettes, manipulated nicotine levels to make cigarettes more addictive, and concealed information about the dangers of smoking.
After a trial on the Phase I common liability issues, the Engle jury returned a verdict in favor of the class on all counts and determined that the Engle defendants’ actions entitled the class to punitive damages. See Engle, 945 So.2d at 1256-57. In denying the Engle defendants’ motion for directed verdict, the trial court summarized the evidence that had been presented in support of each common liability theory and found it sufficient to support the jury’s verdict. See Engle F.J. at *2-5. Specifically, regarding strict liability, the trial court ruled:
There was more than sufficient evidence at trial to satisfy the legal requirements of this [c]ount and to support the jury verdict that cigarettes manufactured and placed on the market by the [Engle] defendants were defective in many ways including the fact that the cigarettes contained many carcinogens, nitrosamines, and other deleterious compounds such as carbon monoxide. That levels of nicotine were manipulated, sometime[s] by utilization of ammonia to achieve a desired “free basing effect” of pure nicotine to the brain, and sometime[s] by using a higher nicotine content tobacco called Y-1, and by other means such as manipulation of the levels of tar and nicotine. The evidence more than sufficiently *424 proved that nicotine is an addictive substance which when combined with other deleterious properties, made the cigarette unreasonably dangerous. The evidence also showed some cigarettes were manufactured with the breathing air holes in the filter being too close to the lips so that they were covered by the smoker thereby increasing the amount of the deleterious effect of smoking the cigarette. There was also evidence at trial that some filters being test marketed utilize glass fibers that could produce disease and deleterious effects if inhaled by a smoker.
Id. at *2. In addition, regarding negligence, the trial court held that “[t]he [Engle ] defendants according to the testimony, well knew from their own research, that cigarettes were harmful to health and were carcinogenic and addictive. By allowing the sale and distribution of said product under those circumstances without taking reasonable measures to prevent injury, constitutes ... negligence.” Id. at *4.
With the common liability issues decided, the Engle jury moved to Phase II, in which it found that three class representatives were entitled to compensatory damages under all counts. Engle, 945 So.2d at 1257. In addition, the Phase II jury awarded class-wide punitive damages in the amount of $145 billion based on its findings concerning the Engle defendants’ conduct. Id. By this point, the parties had collectively presented “over 150 witnesses [and] thousands of documents and exhibits, and [the jury had heard] over 57,000 pages of testimony.” Engle F.J. at *1. Before the individual trials contemplated by Phase III of the class action trial plan could begin, the Engle defendants appealed. See Engle II, 853 So.2d at 442.
Reviewing the Third District’s decision in that appeal, this Court decertified the class “because individualized issues such as legal causation, comparative fault, and damages predominate.” Engle, 945 So.2d at 1268. In addition, we reversed the class-wide punitive damages award as premature because, though the Phase I jury decided the Engle defendants’ common liability to the class under certain claims, it did not decide the plaintiff-specific elements of those claims and, therefore, “did not determine whether the defendants were liable to anyone.” Id. at 1262-63 (quoting Engle II, 853 So.2d at 450). However, we held “that certain common liability findings” made by the class action jury (known as the “Phase I findings”) would have “res judicata effect” in individual damages actions brought within a year of the opinion’s mandate. Id. at 1254, 1277.
Specifically, this Court in Engle held that the following Phase I findings are entitled to res judicata effect: (i) “that smoking cigarettes causes” certain named diseases including COPD and lung cancer; (ii) “that nicotine in cigarettes is addictive;” (iii) “that the [Engle ] defendants placed cigarettes on the market that were defective and unreasonably dangerous;” (iv) “that the [Engle ] defendants concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both;” (v) “that the [Engle] defendants agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment;” (vi) “that all of the [En-gle ] defendants sold or supplied cigarettes that were defective;” (vii) “that all of the [Engle ] defendants sold or supplied cigarettes that, at the time of sale or supply, *425 did not conform to representations of fact made by said defendants;” and (viii) “that all of the [Engle ] defendants were negligent.”[3] Id. at 1276-77. However, this Court disapproved the use of the Phase I conduct findings relating to intentional infliction of emotional distress, fraud and misrepresentation, and civil conspiracy based on misrepresentation because they were “inadequate to allow a subsequent jury to consider individual questions of reliance and legal cause.” Id. at 1255.
In Engle, we explained res judicata generally:
The foundation of res judicata is that a final judgment in a court of competent jurisdiction is absolute and settles all issues actually litigated in a proceeding as well as those issues that could have been litigated. We have explained the doctrine of res judicata as follows:
A judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.
Id. at 1259 (alteration in original) (quoting Kimbrell v. Paige, 448 So.2d 1009, 1012 (Fla.1984)).
B. This Case
The Second District explained the facts of this case, which applies the Engle Phase I findings to an individual plaintiffs strict liability and negligence claims, as follows:
Philip Morris USA, Inc., R.J. Reynolds Tobacco Company, and Liggett Group, LLC (the [defendants]), challenge the final judgment entered after jury trial which awarded James L. Douglas, as the personal representative of the Estate of Charlotte M. Douglas, $2.5 million as damages on claims based on Mrs. Douglas’ smoking-related death.
Mrs. Douglas began smoking cigarettes in the mid-1960s as a teen. The complaint alleged that it was her addiction to cigarettes manufactured by the [defendants] that caused her to develop chronic obstructive pulmonary disease (COPD) and lung cancer, which ultimately led to her death in 2008 at the age of sixty-two.
Mr. Douglas’ third amended complaint alleged claims for strict liability, negligence, breach of express and implied warranty, fraudulent concealment, and conspiracy to fraudulently conceal. Mr. Douglas originally sought both compensatory and punitive damages, but he dismissed his claim for punitive damages before trial. [The jury, using a general verdict form, found the defendants] liable for Mrs. Douglas’ death, apportioning fault as follows: 50% to Mrs. Douglas, 18% to Philip Morris, 5% to R.J. Reynolds, and 27% to Liggett. Additionally, the jury found against Mr. Douglas on the issue of Mrs. Douglas’ detrimental reliance on concealment or omissions by the [defendants].
The crux of this appeal is whether the trial court erred in the application of the findings reached by a jury and affirmed by the Florida Supreme Court in the class action case Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006)[, where] the Florida Supreme Court affirmed [eight of] the [class] jury’s [Phase I] *426 fíndings[, including] (1) that smoking cigarettes causes certain named diseases; (2) “that nicotine in cigarettes is addictive”; (3) that the [defendants] “placed cigarettes on the market that were defective and unreasonably dangerous”; ... and (8) that all the [Engle defendants] “were negligent.”
Douglas, 83 So.3d at 1003-04 (footnotes omitted) (quoting Engle, 945 So.2d at 1276-77).
In determining whether the trial court properly applied the Phase I findings to Mr. Douglas’ strict liability and negligence claims, the Second District examined the trial court’s jury instructions and the general verdict form, which did not ask the jury to return specific findings for each cause of action the plaintiff alleged. Id. at 1004-05. Specifically, the trial court presented the jury with a verdict form that contained five questions. The first asked whether Mrs. Douglas was a member of the Engle class;[4] the jury found that she was. The second question asked the jury to determine whether “smoking cigarettes manufactured by one or more of the [defendants [was] a legal cause of [Mrs. Douglas’] death” and, if so, to determine whether “smoking cigarettes” manufactured by each of the three named defendants was “a legal cause of [Mrs. Douglas’] death.”[5] The jury answered “[y]es” to all parts of question two. Third, the verdict form asked the jury to determine whether Mrs. Douglas “reasonably reified] to her detriment on the concealment or omission by one or more of the [defendants of material information not otherwise known or available or their failure to disclose material facts concerning the health effects or addictive nature of smoking cigarettes.” The jury answered “[n]o.” Fourth, the verdict form asked the jury to apportion fault that was a legal cause of Mrs. Douglas’ death between Mrs. Douglas and the three defendants. Lastly, the verdict form asked the jury to determine the damages to Mr. Douglas for Mrs. Douglas’ death. The jury awarded $4 million of past damages and $1 million of future damages, which the trial court reduced based on the jury’s apportionment of fault.
After reviewing the jury instructions and verdict form, the Second District addressed the defendants’ argument that the *427 trial court improperly relieved Mr. Douglas of his obligation to prove legal causation for his strict liability and negligence claims because it did not require him to “establish that Mrs. Douglas’ injuries were caused by some defect in the cigarettes or by some negligent act of the [defendants].” Douglas, 83 So.3d at 1006. The Second District agreed with the defendants that the verdict could not be supported on a negligence theory because “the verdict form did not ask the jury if it was the [defendants’] failure to exercise reasonable care that was the legal cause of Mrs. Douglas[’] injury.” Id. at 1010 n. 8. Therefore, the Second District concluded that “the jury did not make a finding of legal causation as related to the theory of negligence.” Id.
However, the Second District rejected the defendants’ “argument that [individual] plaintiffs should be required to prove specific defects existing in specific cigarettes” and held that Mr. Douglas proved legal causation on his strict liability claim, reasoning as follows:
Because the Engle Phase I findings are accepted as to the conduct of the [defendants] and the health effects of smoking, to prevail on the theory of strict liability in the instant case, Mr. Douglas needed only to prove legal causation and damages on his claims. The verdict form clearly posed the question of legal causation to the jury, and the jury made a finding that Mrs. Douglas’ diseases were legally caused by her smoking cigarettes manufactured by the [defendants]. That coupled with the Phase I finding that the cigarettes were “defective and unreasonably dangerous” amounts to strict liability.
Id. at 1010. Therefore, the Second District concluded that the verdict was supported by a strict liability theory and affirmed the verdict solely on that basis. Id.
Finally, although the Second District rejected the defendants’ argument that applying res judicata to the Phase I findings violates their due process rights, it certified the due process question to this Court. Id. at 1011.
II. ANALYSIS
A. The Trial Court Properly Applied the Phase I Findings
Here, the defendants claim that the trial court (and the Second District) misapplied Engle by using the Phase I findings to establish the defect and conduct elements of the plaintiffs claims. They argue that because the Engle jury did not adopt a common theory of liability for why their cigarettes were defective or for why their conduct was tortious, the Phase I findings are too general to be binding in individual actions. Instead, the defendants argue that the Phase I findings establish, at most, that some of their cigarettes were defective for some unspecified reason and that they engaged in some, unspecified tortious conduct. This, they claim, requires reversal of the verdict for the plaintiff based on strict liability because the Douglas jury was not instructed (and did not find) a causal connection between a specific defect in the defendants’ cigarettes and the injuries alleged. We disagree and decline the defendants’ invitation to revisit our decision in Engle.[6]
In Engle, 945 So.2d at 1254, this Court held that “the Phase I trial process w[as] not [an] abuse[ ] of the trial court’s discre *428 tion; and that certain common liability findings [from Phase I] can stand.” The approved findings that can stand include findings regarding the general health effects of smoking, namely “that smoking cigarettes causes” certain named diseases including COPD and lung cancer and “that nicotine in cigarettes is addictive.” Engle, 945 So.2d at 1276-77. They also include common liability findings, including findings regarding strict liability (“that the [Engle ] defendants placed cigarettes on the market that were defective and unreasonably dangerous”) and negligence (“that all of the [Engle ] defendants were negligent”). Id. at 1277. Because these findings go to the defendants’ underlying conduct, which is common to all class members and will not change from case to case, we held that these approved “Phase I common core findings ... will have res judicata effect” in class members’ “individual damages actions.” Id. at 1269.
In addition, we recognized that the Phase I jury decided general causation and left “individual” or “specific” causation to be decided in individual actions. We referred to the Phase I jury’s finding that smoking cigarettes causes certain named diseases as a finding on “general causation.” Id. at 1255. Further, we held that “individual causation” must be determined in subsequent lawsuits. Id. at 1254 (emphasis added); see generally Munroe v. Barr Labs., Inc., 670 F.Supp.2d 1299, 1303 (N.D.Fla.2009) (“In a product-liability case involving a drug, a plaintiff ordinarily has the burden of establishing both general and individual causation. General causation is the connection between the drug and injuries of the kind at issue. Individual causation — sometimes called specific causation — is the connection between the drug and the injury that the individual plaintiff actually sustained.”) (citation omitted). In other words, the Phase I common liability jury determined general causation (the connection between the En-gle defendants’ addictive cigarettes and the diseases in question), which leaves specific or individual causation (the connection between the Engle defendants’ addictive cigarettes and the injury that an individual plaintiff actually sustained) to be determined on an individual basis. The Engle defendants may defend against the establishment of individual causation, for example, by proving that the disease at issue was the result of a genetic predisposition, exposure to an occupational hazard, or something unrelated to the plaintiff’s addiction to smoking the Engle defendants’ cigarettes.
Notwithstanding our holding in Engle, the defendants attempt to avoid the binding effect of the Phase I findings by arguing that they are not specific enough to establish a causal link between their conduct and damages to individual plaintiffs who prove injuries caused by addiction to smoking the Engle defendants’ cigarettes. But, by accepting some of the Phase I findings and rejecting others based on lack of specificity, this Court in Engle necessarily decided that the approved Phase I findings are specific enough. See Engle, 945 So.2d at 1255 (concluding that “it was proper to allow the jury to make [the approved] findings in Phase I”); see also Rey v. Philip Morris, Inc., 75 So.3d 378, 382 (Fla. 3d DCA 2011) (concluding that the Phase I findings “extend to the causation between the acts of the ... Engle defendants and the injuries suffered by” the individual plaintiff). In contrast, in Engle, 945 So.2d at 1255 (emphasis added), this Court “unanimously agree[d] that the nonspecific findings in favor of the plaintiffs on ... fraud and misrepresentation [and] intentional infliction of emotional distress ... are inadequate to allow a subsequent jury to consider individual questions of reliance and legal cause ” and *429 held that these findings and the “civil conspiracy-misrepresentation ... [finding, which] relies on the underlying tort of misrepresentation, [could not] stand.”
Accordingly, we reject the defendants’ argument that the Phase I findings are too general to establish any elements of an Engle plaintiffs claims, including a causal connection between the Engle defendants’ conduct and injuries proven to be caused by addiction to smoking their cigarettes. Likewise, we disagree with the dissent’s conclusions that we have interpreted the Phase I strict liability finding to mean more than it says and that the finding is insufficient to support liability. See dissent at 486-37.
The class action trial plan put the Engle defendants on notice that if the Phase I jury found against them, the conduct elements of the class’s claims would be established, leaving only plaintiff-specific issues for individual trials. And our holding allowing the common liability findings to stand would serve no purpose and would in fact be obliterated if the Engle defendants were permitted to relitigate matters pertaining to their conduct.
Furthermore, we are not alone in holding that a defendant’s common liability may be established through a class action and given binding effect in subsequent individual damages actions. See, e.g., Carnegie v. Household Int’l, Inc., 376 F.3d 656, 661 (7th Cir.2004) (recognizing that a class action may be decertified after the liability trial and that the liability findings may be used in subsequent damages actions); Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 628-29 (5th Cir.1999) (holding a defendant’s common liability to all class members for negligence may be tried by one jury and that plaintiff-specific matters such as causation, damages, and comparative negligence may then be tried by different juries in separate cases that do not revisit the first jury’s findings regarding the defendant’s conduct); Daenzer v. Wayland Ford, Inc., 210 F.R.D. 202, 205 (W.D.Mich.2002) (following summary judgment on liability the court decertified the class for individual damages trials and stated that “[t]he Court’s decision as to liability is res judicata in any damages action individual class members decide to bring”); In re Copley Pharm., Inc., 158 F.R.D. 485, 492 (D.Wy.1994) (“[T]he Defendant’s liability for the contaminated Al-buterol ... may be tried to a single jury in a unified trial. Then, if the Plaintiffs are successful, class members may pursue their individual cases in separate trials to determine if they suffered an injury from the contaminated Albuterol, and if so, the proper measure of any damages.”).
In this case, the Second District properly applied Engle when holding that legal causation for the strict liability claim was established by proving that addiction to the Engle defendants’ cigarettes containing nicotine was a legal cause of the injuries alleged. When an Engle class member makes this showing, injury as a result of the Engle defendants’ conduct is assumed based on the Phase I common liability findings. See R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060, 1069 (Fla. 1st DCA 2010), rev. denied, 67 So.3d 1050 (Fla.2011), cert. denied, — U.S. —, 132 S.Ct. 1794, 182 L.Ed.2d 617 (2012) (“individual class plaintiffs, when pursuing [the Engle ] defendants for damages, can rely on the Phase I jury’s factual findings [to] establish the conduct elements of the asserted claims [without having to] independently prove up those elements or demonstrate the relevance of the findings to their lawsuits, assuming they assert the same claims raised in the class action.”).
However, the Second District misapplied our decision in Engle when it required a separate causation instruction and *430 finding for the negligence claim. Like the strict liability claim, the Phase I jury already determined that the defendants’ conduct subjects them to liability to Engle class members under this negligence theory. Therefore, under Engle, the Second District should have applied the Phase I finding regarding the negligence claim in the same manner that it applied the strict liability finding — to conclusively establish that the defendants failed to exercise the degree of care a reasonable cigarette manufacturer would exercise under like circumstances. The negligence Phase I finding coupled with the Douglas jury’s finding that Mrs. Douglas’ addiction to smoking the defendants’ cigarettes containing nicotine was a legal cause of her death amounts to negligence.
In other words, to prevail on either strict liability or negligence Engle claims, individual plaintiffs must establish (i) membership in the Engle class; (ii) individual causation, i.e., that addiction to smoking the Engle defendants’ cigarettes containing nicotine was a legal cause of the injuries alleged; and (iii) damages. See Engle, 945 So.2d at 1254 (recognizing that Engle plaintiffs are required to prove “individual causation” in their damages actions); see also Martin, 53 So.3d at 1069 (holding that the plaintiff proved legal causation for her negligence and strict liability claims by producing “sufficient evidence for a jury to find that [the deceased’s] addiction to [the Engle defendant’s] cigarettes[, stipulated to contain nicotine,] was the legal cause of his death”). Contra R.J. Reynolds Tobacco Co. v. Brown, 70 So.3d 707, 715 (Fla. 4th DCA 2011).
Accordingly, we approve the Second District’s application of Engle to uphold the general verdict for the plaintiff on the strict liability theory based on the Douglas jury’s finding that addiction to smoking the defendants’ cigarettes containing nicotine was a legal, cause of the injuries alleged. However, we disapprove the Second District’s rejection of negligence as an additional basis for the verdict because it requires causation instructions and findings beyond those required by Engle.
B. The Lower Courts’ Application of the Phase I Findings Does Not Violate Due Process
Turning to the certified question, the defendants argue that accepting the Phase I findings as res judicata violates their due process rights because it is not clear from the Phase I verdict which theories of liability the Engle jury actually decided to reach those findings. They claim that allowing individual plaintiffs to rely on the Phase I findings to prove the defect and conduct elements of their claims improperly excuses them from having to prove that the Engle defendants’ conduct was a legal cause of their injuries. We disagree.[7]
We have held that due process “guarantees to every citizen the right to have that course of legal procedure which has been established in our judicial system for the protection and enforcement of private rights. It contemplates that the defendant shall be given fair notice[ ] and afforded a real opportunity to be heard and defend [ ] in an orderly procedure, before judgment is rendered against him.” Dep’t of Law Enforcement v. Real Prop., 588 So.2d 957, 960 (Fla.1991) (quoting State ex rel. Gore v. Chillingworth, 126 Fla. 645, 171 So. 649, 654 (1936)).
Similarly, the United States Supreme Court has identified the requirements of *431 due process as notice and opportunity to be heard and has recognized that applying res judicata to deny a party those rights offends due process:
State courts are free to attach such descriptive labels to litigations before them as they may choose and to attribute to them such consequences as they think appropriate under state constitutions and laws, subject only to the requirements of the Constitution of the United States. But when the judgment of a state court, ascribing to the judgment of another court the binding force and effect of res judicata, is challenged for want of due process it becomes the duty of this Court to examine the course of procedure in both litigations to ascertain whether the litigant whose rights have thus been adjudicated has been afforded such notice and opportunity to be heard as are requisite to the due process which the Constitution prescribes.
Hansberry v. Lee, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940). The United States Supreme Court has also held that eliminating the basic common law protection against an arbitrary deprivation of property violates due process. See Honda Motor Co., Ltd. v. Oberg, 512 U.S. 415, 432, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994) (holding that a state’s constitutional provision prohibiting judicial review of a jury’s award of the amount of punitive damages violates due process).
Here, the defendants suggest that our decision in Engle to allow the Phase I findings to stand is a due process violation. It is not. The Engle class action record belies any argument that the Engle defendants were not afforded notice and opportunity to be heard as to whether their actions should subject them to liability to all class members under the theories alleged by the Engle class. Pursuant to the trial plan, Phase I was devoted to determining the health effects of smoking and the Engle defendants’ common liability to the class. The trial plan put the Engle defendants on notice that the Phase I jury would determine whether their cigarettes were defective, whether they had engaged in tortious conduct, and whether they had breached warranties, and that these common liability findings would be used in later phases. As illustrated by hundreds of witnesses, thousands of documents and exhibits, and tens of thousands of pages of testimony, the Engle defendants had notice and the opportunity to defend against all theories of liability for each of the class’s claims in the year-long Phase I trial. And, as we held in Engle, the Phase I jury’s verdict fully settled all arguments regarding the Engle defendants’ conduct. See Waggoner v. R.J. Reynolds Tobacco Co., 835 F.Supp.2d 1244, 1276 (M.D.Fla.2011) (recognizing the “Phase I trial was conducted for the explicit purpose of determining issues related to the [Engle defendants’ conduct which were common to the entire class, meaning [they] had every reason to litigate each potential theory of liability to the fullest extent possible”).
Moreover, the record in this individual case, where the parties engaged in an eight-day trial, conclusively counters the argument that the Engle defendants are being arbitrarily deprived of their property. As illustrated by the Douglas trial record, which is tens of thousands of pages long, individual plaintiffs do not simply walk into court, state that they are entitled to the benefit of the Phase I findings, prove their damages, and walk away with a judgment against the Engle defendants. Instead, to gain the benefit of the Phase I findings in the first instance, individual plaintiffs must prove membership in the Engle class. As in this case, proving class membership often hinges on the con *432 tested issue of whether the plaintiff smoked cigarettes because of addiction or for some other reason (like the reasons of stress relief, enjoyment of cigarettes, and weight control argued below). Once class membership is established, individual plaintiffs use the Phase I findings to prove the conduct elements of the six causes of action this Court upheld in Engle; however, for the strict liability and negligence claims at issue here, they must then prove individual causation and damages. If an individual plaintiff receives a favorable verdict, it is then subject to appellate review. Therefore, the Engle defendants receive the same process as any civil defendant. See Waggoner, 835 F.Supp.2d at 1273-74 (recognizing that giving the Phase I findings res judicata effect does not arbitrarily deprive the Engle defendants of their property because, to gain the benefit of these findings, individual plaintiffs must first prove class membership and then, after clearing that hurdle, must prove the remaining elements of a prima facie case, all of which is subject to judicial review).
At its core, the defendants’ due process argument is an attack on our decision in Engle to give the Phase I findings res judicata — as opposed to issue preclusion— effect in class members’ individual damages actions. However, res judicata is the proper term, and we decline the defendants’ invitation to rewrite Engle.
In accordance with the Engle trial plan, the same parties to this action (the defendants and the plaintiffs through the class representatives) litigated aspects of the class’s claims that were common to all class members in Phase I. Specifically, as related to the defendants’ due process argument, the parties litigated whether the Engle defendants’ cigarettes and conduct in marketing and selling their cigarettes exposed them to liability under specific theories (like strict liability and negligence) if an individual class member subsequently proved injuries caused by his or her addiction to those cigarettes. And the Phase I verdict against the Engle defendants resolved all elements of the claims that had anything to do with the Engle defendants’ cigarettes or their conduct. See Martin, 53 So.3d at 1067 (recognizing that the Engle jury decided “the ‘conduct’ elements of the claims asserted by the class, and not simply ... a collection of facts relevant to those elements”). By holding that the Phase I findings are entitled to “res judicata effect,” our decision in Engle allowed members of the decertified class to pick up litigation of the approved six causes of action right where the class left off — i.e., with the Engle defendants’ common liability for those claims established. As we recognized in Engle, 945 So.2d at 1269, those individual damages actions would not revisit the aspects of the Engle claims resolved by the Phase I findings, but would focus only on the remaining individual aspects of the claims specific to each plaintiff.
Because the claims in Engle and the claims in individual actions like this case are the same causes of action between the same parties, res judicata (not issue preclusion) applies. As we explained in Engle, 945 So.2d at 1259 (quoting Kimbrell, 448 So.2d at 1012), res judicata prevents the same parties from relitigating the same cause of action in a second lawsuit and “is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.” With the Engle defendants’ common liability established by the Phase I findings, individual plaintiffs do not have to reprove those elements of their claims. Likewise, Engle defendants are precluded from arguing in individual actions that *433 they did not engage in conduct sufficient to subject them to liability. That the Engle jury did not make detailed findings for which evidence it relied upon to make the Phase I common liability findings is immaterial. As the Engle trial court recognized in its final judgment, there was competent substantial evidence to support the Engle defendants’ common liability to the class, and, by approving the use of the Phase I findings for that purpose in individual actions in Engle, we agreed. See Martin, 53 So.3d at 1067 (“No matter the wording of the findings on the Phase I verdict form, the jury considered and determined specific matters related to the [Engle ] defendants’ conduct. Because the findings are common to all class members, [individual plaintiffs are] entitled to rely on them in [their] damages action[s] against [the En-gle defendants].”).
Unlike res judicata, issue preclusion (i.e., collateral estoppel) prevents the same parties from relitigating the same issues that were litigated and actually decided in a second suit involving a different cause of action. See Topps v. State, 865 So.2d 1253, 1255 (Fla.2004). Applying this doctrine here — to the same causes of action from the class action as opposed to a different cause of action — would be improper.
Further, to decide here that we really meant issue preclusion even though we said res judicata in Engle would effectively make the Phase I findings regarding the Engle defendants’ conduct useless in individual actions. See Martin, 53 So.3d at 1067 (concluding that individual plaintiffs are not required to “trot out the class action trial transcript to prove applicability of the Phase I findings” because “[s]uch a requirement undercuts the supreme court’s ruling” in Engle). In other words, we used the correct term when we gave the Phase I findings “res judicata effect,” signifying that relitigation of the elements of the class’s causes of action established by the Phase I findings would be barred.
Though the dissent argues that our analysis regarding claim and issue preclusion is incorrect, it does so primarily based on a conclusion that claim preclusion cannot apply because “the judgment that emerged from Engle was not a final judgment on the merits.” Dissent at 436. Respectfully, the Engle judgment was a final judgment on the merits.
In J. Schnarr & Co. v. Virginia-Carolina Chem. Corp., 118 Fla. 258, 159 So. 39, 42 (1934), we explained what constitutes a final judgment on the merits:
A judgment is upon the merits when it amounts to a declaration of the law as to the respective rights and duties of the parties based upon the ultimate facts disclosed by the pleadings and evidence and upon which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions.
In contrast, we have recognized that a “purely technical,” non-merits judgment “may not be used as a basis for the operation of the doctrine of res judicata.” Kent v. Sutker, 40 So.2d 145, 147 (Fla.1949).[8]
The Engle judgment was a final judgment on the merits because it resolved substantive elements of the class’s claims against the Engle defendants. The elements that the class jury resolved were not merely procedural or technical. In *434 stead, after considering voluminous evidence presented during a year-long trial, the class jury resolved the substantive matter of the Engle defendants’ common liability to the class under several legal theories.
The dissent cites to treatises that imply that a monetary award is required for a final judgment on the merits. See dissent at 437-38. However, in the context of a class action, common issues (including elements of claims) are often tried to final judgment separately from individual issues, with the jury’s findings in the first trial binding in the second even though the first trial does not result in a money judgment:
A bifurcated procedure allows the class representative to try common issues to final judgment. ... If the class representative prevails on the common issues, ... individual issues may be resolved in a second trial.
3 A. Conte & H. Newberg, Newberg on Class Actions § 9:53 (4th ed. 2012) (emphasis added); see also id. at § 9:47 (“Not infrequently, actions filed as class actions present predominating common issues of liability, while proof of damages may remain as individual issues for the several class members.... Courts have frequently upheld class actions limited to common issues, while deferring or severing individual issues of the named parties or of the class for later disposition.”); Manual for Complex Litigation (4th) § 21.24 (2006) (recognizing that federal law “permits a class to be certified for specific issues or elements of claims raised in the litigation” where “the common issues are tried first, followed by individual trials on questions such as proximate causation and damages”); 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1790 (3d ed. 2012) (recognizing a court’s ability “to allow a partial class action to go forward, leaving questions of reliance, damages, and other issues to be adjudicated on an individual basis”) (footnotes omitted). To be clear, this type of bifurcation in the class action context, with common issues tried to final judgment before subsequent individual issues are tried in separate cases, is distinguishable from separating a single case into liability and damages phases that are tried before the same jury without a final judgment between the phases. See Meyers v. Metro. Dade County, 748 So.2d 920, 921 (Fla.1999) (recognizing that in a typical bifurcated negligence proceeding “if the jury in the first phase of the proceeding returns a verdict of liability, no final judgment is entered until the second phase of the proceeding on damages has been concluded”).
When class actions are certified to resolve less than an entire cause of action, the final judgment from the first trial on the common liability issues is entitled to res judicata effect in the subsequent trial on individual issues. See Daenzer, 210 F.R.D. at 205 (explaining that the judgment “as to liability is res judicata in any damages action individual class members decide to bring”); McCormack v. Abbott Labs., 617 F.Supp. 1521, 1524 (D.Mass.1985) (recognizing that parties to a class action are “bound by all rulings of substantive law made” prior to decertification); Hernandez v. Motor Vessel Skyward, 61 F.R.D. 558, 561 (S.D.Fla.1973) (concluding that the class jury’s determination regarding the defendants’ negligent conduct would be binding in individual damages actions). Accordingly, this Court in Engle did not violate the doctrine of res judicata in allowing the common liability findings to stand and decertifying the class for individual damages actions where those findings would be binding.[9]
*435 Moreover, as a constitutional matter, the Engle defendants do not have the right to have issue preclusion, as opposed to res judicata, apply to the Phase I findings. The case that the defendants cite for this proposition, Fayerweather v. Ritch, 195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193 (1904), involves the proper application of federal common law on collateral estoppel (i.e., issue preclusion), not res judicata (i.e., claim preclusion). Also, in Fayerweather, the United States Supreme Court made the same distinctions between federal common law on res judicata and issue preclusion that we have long applied in Florida. Of specific importance to this ease, the Supreme Court recognized that claim preclusion, unlike issue preclusion, has no “actually decided” requirement but, instead, focuses on whether a party is attempting to relitigate the same claim, without regard to the arguments or evidence that were presented to the first jury that decided the claim:
there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand [ (res judicata) ], and its effect as an estoppel in another action between the same parties upon a different claim or cause of action [ (issue preclusion) ]. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.... The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.
Fayerweather, 195 U.S. at 300, 25 S.Ct. 58 (quoting Cromwell v. Sac County, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)); see also Topps, 865 So.2d at 1254-55 (recognizing the same differences between res judicata (i.e., claim preclusion) and issue preclusion (i.e., collateral estoppel)). Therefore, the United States Supreme Court’s decision in Fayerweather does not impose a constitutional impediment against giving the Phase I findings res judicata effect.
Accordingly, we decline to revisit or render meaningless our decision in Engle and hold that the Engle defendants’ due process rights are not being violated. The Engle defendants have the same procedural safeguards against the arbitrary deprivation of property as are present in any other case, namely that each plaintiff must *436 prove a prima facie case against each defendant. That certain elements of the pri-ma facie case are established by the Phase I findings does not violate the Engle defendants’ due process rights because they were parties to and had notice and opportunity to be heard in the class action where those elements were decided. See Waggoner, 835 F.Supp.2d at 1279 (“Defendants had full notice and opportunity to be heard in the year-long trial of Phase I of the Engle case.”).
III. CONCLUSION
As this Court held in Engle, the Phase I findings establish the Engle defendants’ common liability for the strict liability, negligence, breach of express and implied warranty, fraudulent concealment, and conspiracy to fraudulently conceal claims alleged by the Engle class. Therefore, the trial court properly applied the Phase I findings to prevent relitigation of those elements, and we approve the Second District’s decision in Douglas to the extent that it affirms the verdict for the plaintiff based on strict liability. However, we disapprove the Second District’s rejection of negligence as a basis for the general verdict because the Second District’s analysis requires causation instructions and findings beyond those required by Engle. We also answer the certified question in the negative and hold that accepting the Phase I findings as res judicata does not violate the Engle defendants’ due process rights.
It is so ordered.
PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion.

. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

. The Engle trial court summarized the three-phase trial plan in its final judgment:
[I]n Phase I, the jury was required to determine, among other issues: 1) whether smoking cigarettes caused the disease(s) in question, 2) resolve general issues of causa *423 tion, 3) determine the extent of the defendants wrongful conduct, and 4) determine entitlement to punitive damages.... The same jury in Phase IIA was then asked to: among other issues, 1) determine individual issues of causation for the class representatives, and, 2) determine the representative class members compensatory damages....
In Phase III, the individual claims of the class members will be tried before different judges and different juries to determine whether the injuries complained of were the result of cigarette smoking or from other causes, and what if any, damages resulted from that activity. The Juries in Phase III will not be concerned with the general causation issues of the previous trials, nor the conduct or behavior of the defendants ... those issues have already been resolved, and subsequent juries may be so instructed.
Engle F.J. at *12 (emphasis added).

. Regarding negligence, the Phase I jury’s verdict form states that the Engle defendants "failed to exercise the degree of care which a reasonable cigarette manufacturer would exercise under like circumstances.”

. The trial court had instructed the jury that it must determine whether Mrs. Douglas was a member of the Engle class of “cigarette smokers who on or before November 21, 1996, suffered from a disease or medical condition legally caused by an addiction to cigarettes — to smoking cigarettes containing nicotine.” Douglas, 83 So.3d at 1004 (quoting trial court). The trial court further explained that:
addiction to smoking cigarettes containing nicotine is a legal cause of a disease or medical condition if it directly and in natural and continuous sequence produces or contributes substantially to producing such disease or medical condition so that it can reasonably be said that but for an addiction to cigarettes containing nicotine, such disease or medical condition would not have been suffered.
Id. at 1005 (quoting trial court). Then, the trial court instructed the jury that, if it determined that Mrs. Douglas was a member of the Engle class, "it was to accept the eight Phase I Engle findings as proven fact [and] spelled out for the jury each of the eight Phase I findings.” Id.

. The trial court instructed the jury on legal causation as follows:
The smoking of defendants' cigarettes is a legal cause of loss, injury, or damage to [Mrs. Douglas] if it directly and in natural continuous sequence produce[d] or contribute[d] substantially to producing such loss, injury, or damage so that it can reasonably be said that but for smoking defendants’ cigarettes, the loss, injury, or damage would not have occurred.
Id. at 1005 (quoting trial court). In addition, the trial court instructed the jury on concurring causation. Id. at 1005 n. 6.

. We review the trial court's decision to give the Phase I findings res judicata effect de novo. See Campbell v. State, 906 So.2d 293, 295 (Fla. 2d DCA 2004) ("The de novo standard of review applies to a trial court’s ruling that a defendant is barred from obtaining relief on the grounds of res judicata....”).

. We review this issue de novo. See State v. Myers, 814 So.2d 1200, 1201 (Fla. 1st DCA 2002) (utilizing the de novo standard to review "the trial court’s legal conclusion as to whether the facts constitute a due process violation”).

. Similarly, Black's Law Dictionary defines “judgment on the merits” as “[a] judgment based on the evidence rather than on technical or procedural grounds” and "merits” as "[t]he elements or grounds of a claim or defense; the substantive considerations to be taken into account in deciding a case, as opposed to extraneous or technical points, esp. of procedure.” Black’s Law Dictionary 920, 1079 (9th ed. 2009).

. We do not address the dissent’s discussion of the concept of "direct estoppel” because Florida courts do not use the term and because it would not apply here regardless since the Engle judgment was a merits-based judgment, not a technical or procedural ruling. See Acree v. Air Line Pilots Ass'n, 390 F.2d 199, 203 (5th Cir.1968) (noting that direct estoppel applies to technical or procedural non-merits decisions like dismissals for lack of subject matter jurisdiction); Restatement (First) of Judgments § 49, cmt. b (1942) (explaining direct estoppel to mean precluding relitigation of non-merits based issues, such as dismissal for the non joinder of a third person, in subsequent litigation); see also Kent, 40 So.2d at 146-47 (explaining that we apply "res judicata” only to decisions on the merits as opposed to technical or procedural decisions).