DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHIRLEY B. BAKER,** Personal Representative of the **ESTATE OF ELMER P. BAKER,**
Appellant,

v.

**R.J. REYNOLDS TOBACCO COMPANY,**
Appellee.

No. 4D13-570

[February 18, 2015]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; David F. Crow, Judge; L.T. Case No. 502007CA020247XX.

David J. Sales of David J. Sales, P.A., Jupiter, for appellant/cross-appellee.

Robert C. Weill, Eric L. Lundt, Gordon James, III, and Lenor C. Smith of Sedgwick LLP, Fort Lauderdale, Donald Ayer and Gregory G. Katsas of Jones Day, Washington, D.C., and Charles R.A. Morse of Jones Day, New York, NY, for appellee/cross-appellant.

KLINGENSMITH, J.

Shirley Baker ("Plaintiff") sued R.J. Reynolds Tobacco Co. ("Defendant") for the death of her husband Elmer Baker ("Mr. Baker") that was allegedly caused by smoking. In her lawsuit, Plaintiff asserted claims for negligence, strict liability, concealment, and conspiracy. After the jury found Defendant's actions were not the legal cause of her husband's death, she argued that under the Florida Supreme Court's decision in *Engle v. Liggett Group*, 945 So. 2d 1246 (Fla. 2006) (hereinafter *Engle III*), the jury's finding that Mr. Baker was a member of the *Engle* class consequently established the conduct and causation elements of her claims. She appeals the trial court's entry of final judgment in favor of Defendant, arguing the trial court erred in denying her motion for a new trial because the jury's verdict was internally inconsistent. For the reasons set forth below, we affirm.

*Engle* began as a class action lawsuit filed in 1994 against cigarette companies and tobacco industry organizations seeking damages for smoking-related illnesses and deaths. The class included all Florida "citizens and residents, and their survivors, who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine." *R.J. Reynolds Tobacco Co. v. Engle*, 672 So. 2d 39, 40-42 (Fla. 3d DCA 1996) (hereinafter *Engle I*). In *Engle III*, our supreme court decertified the class, but allowed certain jury findings from the class action to have *res judicata* effect in any subsequent lawsuits brought by individual class members seeking damages from the defendants.

The *Engle I* jury made the following findings (hereinafter the *Engle* findings), which the Florida Supreme Court approved:

> [A]s to Question 1 (that smoking cigarettes causes aortic aneurysm, bladder cancer, cerebrovascular disease, cervical cancer, chronic obstructive pulmonary disease, coronary heart disease, esophageal cancer, kidney cancer, laryngeal cancer, lung cancer (specifically, adenocarinoma, large cell carcinoma, small cell carcinoma, and squamous cell carcinoma), complications of pregnancy, oral cavity/tongue cancer, pancreatic cancer, peripheral vascular disease, pharyngeal cancer, and stomach cancer), 2 (that nicotine in cigarettes is addictive), 3 (that the defendants placed cigarettes on the market that were defective and unreasonably dangerous), 4(a) (that the defendants concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both), 5(a) (that the defendants agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment), 6 (that all of the defendants sold or supplied cigarettes that were defective), (7) (that all of the defendants sold or supplied cigarettes that, at the time of sale or supply, did not conform to representations of fact made by said defendants), and 8 (that all of the defendants were negligent).

*Id.* at 1276-77.

"In [*Engle I*], the jury decided issues related to Tobacco's conduct but did not consider whether any class members relied on Tobacco's misrepresentations or were injured by Tobacco's conduct." *Id.* at 1263. "The questions related to some, but not all of the elements of each legal theory alleged." *Liggett Group Inc. v. Engle*, 853 So. 2d 434, 450 (Fla. 3d DCA 2003) (hereinafter *Engle II*). Critical elements of liability, such as reliance and legal causation, were not determined by the *Engle I* jury. *Id.* Accordingly, the *Engle I* jury did not determine Tobacco's ultimate liability to any individual class member. *Id.*; *Engle III*, 945 So. 2d at 1263.

At trial in the instant case, both parties submitted proposed jury instructions and verdict forms to the court for approval and submission to the jury. Plaintiff was successful in getting the court to agree to her requested separate instructions regarding both class membership and legal causation. As to class membership, the Plaintiff's instructions asked the jury to determine "whether [Mr.] Baker was addicted to cigarettes containing nicotine: and if so, whether his addiction was a legal cause of his lung cancer and death." As to legal cause, Plaintiff agreed to jury instructions requiring the jury to find "for the defendant" if they made a specific finding that "the negligence of the defendant" or "the defective and unreasonably dangerous cigarettes placed on the market by the defendant" were not "a legal cause of [Mr.] Baker's lung cancer and death." Finally, over Defendant's objections, the trial court instructed the jury that the *Engle* findings would be binding if they determined that Mr. Baker was a member of the *Engle* class. In that event, the findings would establish the conduct elements of Plaintiff's tort claims, leaving only legal causation, comparative fault, damages, and entitlement to punitive damages for the jury to consider.

The trial court advised the jury, over defense objections, that if they found Mr. Baker was addicted to cigarettes containing nicotine and such addiction was the legal cause of death, "certain findings from a prior trial will be binding on you and the parties." The court then gave the following instructions, by agreement of Plaintiff's counsel, that:

> If you find for the plaintiff on this issue, these findings may not be denied or questioned and must carry the same weight they would have if you had determined them yourselves. These findings are: One, smoking cigarettes causes lung cancer; two, nicotine in cigarettes is addictive; three, R.J. Reynolds Tobacco Company placed cigarettes on the market that were defective and unreasonably dangerous; four, R.J. Reynolds Company concealed or omitted material information not otherwise known or available, knowing that the material

3

was false or misleading, or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both; five, R.J. Reynolds Tobacco Company agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment; six, R.J. Reynolds Tobacco Company sold or supplied cigarettes that were defective; seven, R.J. Reynolds Tobacco Company was negligent.

**These findings do not establish that Reynolds is liable for the plaintiff in this case, nor do they establish whether Elmer P. Baker was injured by Reynolds' conduct, nor the degree, if any, to which Reynolds' conduct was a legal cause of Elmer P. Baker's lung cancer and death.**

. . . .

On plaintiff's negligence claim, the issue for your determination is whether the negligence of the defendant was a legal cause of Elmer P. Baker's lung cancer and death. . . .

. . . .

Negligence is a legal cause of lung cancer and death if it directly and in natural and continuous sequence produces or contributes substantially to producing such lung cancer and death, so that it can reasonably be said that, but for the negligence, the lung cancer and death would not have occurred.

In order to be regarded as a legal cause of lung cancer and death, negligence need not be the only cause. Negligence may be a legal cause of lung cancer and death, even though it operates in combination with the act of another or some other cause if the negligence contributes substantially to producing such lung cancer and death.

On plaintiff's strict liability claim, the issue for your determination is whether the defective and unreasonably dangerous cigarettes placed on the market by the defendant were a legal cause of Elmer P. Baker's lung cancer and death.

(Emphasis added).

4

In accord with these instructions, the proposed verdict form—which the trial court also adopted at Plaintiff's request—was worded as follows:

1. Was Elmer P. Baker addicted to cigarettes containing nicotine and, if so, was such addiction a legal cause of his lung cancer and death?

Yes_____          No_____

If your answer to question 1 is NO, then your verdict on all claims is for Defendant, R.J. Reynolds Tobacco Company, and you should not proceed further except to date and sign the Verdict Form and return it to the Courtroom.

**If your answer to Question 1 is YES, please answer questions 2, 3, 4 and 5.**

2. Was the negligence of R.J. Reynolds Tobacco Company a legal cause of Elmer P. Baker's lung cancer and death?

Yes_____          No_____

3. Were the defective and unreasonably dangerous cigarettes placed on the market by R.J. Reynolds Tobacco Company a legal cause of Elmer P. Baker's lung cancer and death?

Yes_____          No_____

4. Please state whether Elmer P. Baker reasonably relied to his detriment on any statement by R.J. Reynolds Tobacco Company which concealed or omitted material information concerning the health effects and/or addictive nature of smoking cigarettes, and if so, whether such reliance was a legal cause of his lung cancer and death.

    4(a) Before May 5, 1982?               Yes___   No___
    4(b) After May 5, 1982?                 Yes___   No___
    4(c) Both before and after May 5, 1982?   Yes___   No___

5. Please state whether Elmer P. Baker reasonably relied to his detriment on any act done in furtherance of the defendant's agreement to conceal or omit material information concerning the health effects and/or addictive nature of

smoking cigarettes, and if so, whether such reliance was a legal cause of his lung cancer and death.

> 5(a) Before May 5, 1982?　　　　　　　Yes___　No___
> 5(b) After May 5, 1982?　　　　　　　　Yes___　No___
> 5(c) Both before and after May 5, 1982?　Yes___　No___

**If you answered NO to questions 2, 3, 4 and 5, then your verdict on all claims is for the Defendant R.J. Reynolds Tobacco Company,** and you should not proceed further except to date and sign the Verdict Form and return it to the Courtroom.

(Emphasis added).

The jury answered "yes" to question 1, but answered "no" to each question and subsection of questions 2, 3, 4 and 5. Plaintiff then argued to the trial court for the first time that the jury's class-membership finding was inconsistent with their other findings that neither negligence nor a product defect legally caused Mr. Baker's injuries. The trial court ultimately denied Plaintiff's request for a new trial and entered judgment for Defendant on all of Plaintiff's claims. This appeal ensued.

Plaintiff contends that the jury's verdict was internally inconsistent because it found Mr. Baker was a member of the *Engle* class, yet also found his lung cancer and death were not caused by Defendant's negligence nor by unreasonably dangerous and defective cigarettes. She argues that when the jury found that Mr. Baker was a member of the *Engle* class, they were therefore precluded from finding that his lung cancer and death were not caused by Defendant's negligence. In response, Defendant asserts that any claimed inconsistency was the direct result of Plaintiff's own jury instructions and verdict form and is invited error.

Under "the invited error rule 'a party cannot successfully complain about an error for which he or she is responsible or of rulings that he or she has invited the trial court to make.'" *Fuller v. Palm Auto Plaza, Inc.*, 683 So. 2d 654, 655 (Fla. 4th DCA 1996) (quoting *Gupton v. Vill. Key & Saw Shop, Inc.*, 656 So. 2d 475, 478 (Fla. 1995)); *see also Muina v. Canning*, 717 So. 2d 550, 553 (Fla. 1st DCA 1998); *Weber v. State*, 602 So. 2d 1316, 1319 (Fla. 5th DCA 1992) ("[C]ounsel should not be allowed to sandbag the trial judge by requesting and approving an instruction they know or should know will result in an automatic reversal, if given."). Thus, "[a] party cannot claim as error on appeal that which he invited or introduced below." *Fuller*, 683 So. 2d at 655 (citation and internal

quotation marks omitted)). Consistent with these principles, the "failure to object to the [jury] instructions estops [a party] from arguing an inconsistent verdict." *Dial v. State*, 922 So. 2d 1018, 1021 n.1 (Fla. 4th DCA 2006); *see also McKee v. State*, 450 So. 2d 563, 564 (Fla. 3d DCA 1984) ("the defendant is estopped from advancing the claim of inconsistent verdicts," because "the defendant not only failed to object to the instructions, but also expressed his agreement to its submission").

Florida Rule of Civil Procedure 1.470(b) also states: "No party may assign as error the giving of any instruction unless the party objects thereto at such time . . . ." *See Jenkins v. State*, 380 So. 2d 1042, 1044 (Fla. 4th DCA 1980) ("[T]he failure to make timely objection constitutes a waiver of the objection."). "This requirement is based on practical necessity and basic fairness in the operation of a judicial system. . . . [And it] prevents counsel from allowing errors in the proceedings to go unchallenged and later using the error to a client's tactical advantage." *Insko v. State*, 969 So. 2d 992, 1001 (Fla. 2007) (citations and internal quotation marks omitted).

Plaintiff cites to *Philip Morris USA, Inc. v. Douglas*, 110 So. 3d 419 (Fla. 2013), to support her request for a new trial. In that case, the Florida Supreme Court found that legal causation for the strict liability claim in *Engle*-progeny cases is "established by proving that addiction to the *Engle* defendants' cigarettes containing nicotine was a legal cause of the injuries alleged." *Id.* at 429. Plaintiff argues that under *Douglas*, once the jury found Mr. Baker was a member of the *Engle* class, they were prohibited from finding that Mr. Baker's addiction to Defendant's cigarettes was not the legal cause of his illness and death.

The *Douglas* opinion was issued after the trial in this cause, and there is uncertainty whether its holding represents a change in the law, or is a mere clarification of existing law. Even assuming *arguendo* that *Douglas* is a change in the governing law, Plaintiff was still obliged to preserve her argument by stating an objection at trial in order to benefit from that change. *See Smith v. State*, 598 So. 2d 1063, 1066 (Fla. 1992) (finding "that any decision of this Court announcing a new rule of law, or merely applying an established rule of law to a new or different factual situation, must be given retrospective application by the courts of this state in every case pending on direct review or not yet final. Art. I, §§ 9, 16, Fla. Const. To benefit from the change in law, the defendant must have timely objected at trial if an objection was required to preserve the issue for appellate review."). Because Plaintiff did not object to the submission of the instructions or the verdict form to the jury, our supreme court's decision in *Douglas* does not retroactively apply.

In response to the claim of invited error, Plaintiff contends she was required to propose these jury instructions to the trial court, which included separate legal causation questions, pursuant to this court's decision in *R.J. Reynolds Tobacco Co. v. Brown*, 70 So. 3d 707 (Fla. 4th DCA 2011). In that case, this court found that "post-*Engle* plaintiffs still must prove the remaining elements of each legal theory alleged. Trial courts must instruct the jury on the remaining elements, causation, comparative fault, and damages and allow the jury to make those decisions." *Id.* at 718. However, at the time of trial in this matter, the issue of how to apply *Engle* findings was still in jurisprudential development. We specifically noted this situation in *Brown*, and highlighted the conflict among various courts on the issue presented to the trial court:

> From a jurisprudence standpoint, the issue of how to apply the *Engle* findings is in its infancy. Presently, two opinions have addressed the issue: *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060 (Fla. 1st DCA 2010) and *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324 (11th Cir. 2010). In *Martin*, the First District concluded that the *Engle* Phase I findings established the conduct elements of the asserted claims. *Martin*, 53 So. 3d at 1069. *Martin* also determined the plaintiff in that case had proven legal causation on her negligence and strict liability claims. *Id.* In making that determination, the *Martin* court pointed to the trial court's instruction on legal causation with respect to addiction, which established plaintiff's membership in the class. *Id.* We read *Martin* to approve the use of the class membership instruction for the dual purpose of satisfying the element of legal causation with respect to addiction and legal causation on the underlying strict liability and negligence claims.

> In contrast, the Eleventh Circuit in *Brown* refused to give the *Engle* findings such broad application. *Brown* determined that the Florida Supreme Court's discussion of the res judicata effect of the Phase I findings necessarily referred to issue preclusion. 611 F.3d at 1333. Under that doctrine, "the Phase I approved findings may not be used to establish facts that were not actually decided by the jury." *Id.* at 1334. *Brown* remanded the case to the district court to determine the scope of the factual issues decided in *Engle* Phase I, and then to decide "which, if any, elements of the claims [were] established" by those findings. *Id.* at 1336. "Until the scope of the factual issues decided in the Phase I approved findings is

8

determined, it is premature to address whether those findings by themselves establish *any* elements of the plaintiffs' claims." *Id.* (emphasis added). We conclude that the *Martin* court did not go far enough and the *Brown* court went too far.

*Brown,* 70 So. 3d at 714-15.

Whether plaintiffs in tobacco cases post-*Engle* had to prove more than mere class membership and damages was an unsettled area of law prior to *Douglas.* By seeking to have the jury separately decide the issue of causation, and without raising the issue of what effect should be given to an *Engle* class finding, Plaintiff failed to preserve her right to appeal and cannot now successfully claim error simply because the jury returned an adverse verdict. *See Gupton,* 656 So. 2d at 478; *see also Sheffield v. Superior Ins. Co.,* 800 So. 2d 197, 202-03 (Fla. 2001) (stating that under the rule of invited error, "'a party may not make or invite error at trial and then take advantage of the error on appeal.'" (quoting *Goodwin v. State,* 751 So. 2d 537, 544 n.8 (Fla. 1999))). Further, Plaintiff's failure to object prevents us from revisiting the jury verdict because "[t]he jury cannot be faulted for doing exactly what it was instructed to do." *See Plana v. Sainz,* 990 So. 2d 554, 557 (Fla. 3d DCA 2008); *see also Beverly Health & Rehab. Servs., Inc. v. Freeman,* 709 So. 2d 549, 551 (Fla. 2d DCA 1998) (holding that plaintiff waived error by agreeing to the verdict form); *Papcun v. Piggy Bag Disc. Souvenirs, Food & Gas Corp.,* 472 So. 2d 880, 881 (Fla. 5th DCA 1985) (citing to well-established Florida law and stating that "failure to object to a verdict form regarding defects not of a constitutional or fundamental character constitutes a waiver of such defects"). As such, Plaintiff waived any argument that the alleged inconsistency is grounds for a new trial. *See Cocca v. Smith,* 821 So. 2d 328, 330-31 (Fla. 2d DCA 2002).

We find the Plaintiff's remaining issues on appeal to be without merit, and hereby affirm the trial court's denial of Plaintiff's motion for new trial.

*Affirmed.*

STEVENSON and MAY, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

9