MARTIN, Circuit Judge, concurring:
My approach to the question of whether giving preclusive effect to the Engle jury's fraudulent-concealment and conspiracy-to-fraudulently-conceal findings violates due process is different from that of the Majority.[1] I write separately for that reason. In Graham v. R.J. Reynolds Tobacco Co., 857 F.3d 1169 (11th Cir. 2017) (en banc) our court held that giving preclusive effect to the Engle jury's negligence and strict liability findings did not violate due process. Id. at 1174. I recognize that the fraudulent-concealment and conspiracy-to-fraudulently-conceal findings that we address here were not considered by our en banc court in Graham. Even so, I view the reasoning of Graham to foreclose any due *1363 process challenge to Engle's concealment findings, just as it did for Engle's negligence and strict liability findings. It was for that reason that I dissented from my colleagues' decision, over seven months ago, to order supplemental briefing following this Court's decision in Graham. And also for that reason, I continue to disagree with the Majority's description of the questions presented in this case after Graham was decided. See Maj. Op. at 1351-54.
Our divergent views stem from our disagreement about how Graham decided the due process issue. The Majority says Graham held that due process was satisfied only after the court conducted an exacting, de novo review of the Engle trial record to determine what was "actually decided" by the Engle jury. Op. at 1353-54; see Graham, 857 F.3d at 1182-83. But to the contrary, Graham actually held that the Florida Supreme Court's rulings about what the Engle jury decided were due full faith and credit.
Before Graham said anything about the trial record, the opinion first reviewed the Florida Supreme Court's decisions in Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla. 2006), and Philip Morris USA, Inc. v. Douglas, 110 So.3d 419 (Fla. 2013). It concluded "[t]he Florida Supreme Court made clear in Douglas that the Engle jury decided common elements of the negligence and strict liability of the tobacco companies for all class members." Graham, 857 F.3d at 1182. After it discussed these decisions of the Florida Supreme Court, Graham then referenced the Engle trial record in order to apply those Florida Supreme Court rulings, not to conduct a de novo review of what had been decided by the Engle jury. Graham, 857 F.3d at 1182-83. The en banc court concluded that, "[a]fter reviewing the Engle trial record, we are satisfied that the Florida Supreme Court determined that the Engle jury found the common elements of negligence and strict liability against Philip Morris and R.J. Reynolds." Id. at 1182 (emphasis added); see also id. at 1183 ("The only way to make sense of these proceedings is that the Florida courts determined that the Engle jury actually decided issues common to the class ...."). Then in its final paragraph on the due process issue, Graham makes clear its holding derived from giving full faith and credit to the Florida Supreme Court's decision in Engle. On that point, our en banc court stated, "We do not give full faith and credit to the decision in Douglas; we instead give full faith and credit to the jury findings in Engle. The Florida Supreme Court in Engle interpreted those findings to determine what the jury actually decided ...." Graham, 857 F.3d at 1185. This summary underscores that the holding in Graham rests on giving full faith and credit to the judgment of the Florida Supreme Court.
In addition to what Graham said about it, giving full faith and credit to Florida's highest court is consistent with this Court's prior precedent in Walker v. R.J. Reynolds Tobacco Co., 734 F.3d 1278, (11th Cir. 2013). And of course, Graham expressly "reaffirm[ed]" Walker. Graham, 857 F.3d at 1174. In Walker, a panel of this Court stated:
If due process requires a finding that an issue was actually decided, then the Supreme Court of Florida made the necessary finding when it explained that the approved findings from Phase I "go to the defendants underlying conduct which is common to all class members and will not change from case to case" and that "the approved Phase I findings are specific enough" to establish certain elements of the plaintiffs' claims.
Walker, 734 F.3d at 1289 (quoting Douglas, 110 So.3d at 428 ). Read together, Walker and Graham do not require a de *1364 novo review of the trial record to determine what the Engle jury decided.
It is for these reasons that I do not endorse the Majority's description of the threshold question facing us in this case after Graham. See Maj. Op. at 1351-54.[2] Under Graham, our job is only to determine whether the Florida courts had ruled that the Engle jury actually decided the common elements of fraudulent concealment and conspiracy to fraudulently conceal for all class members. Because the Florida Supreme Court has so held, this analysis should have been straightforward. See Graham, 857 F.3d at 1182 (summarizing the Florida Supreme Court's ruling that "the Phase I findings establish the causal link between the tobacco companies' conduct and the class members' injuries because the companies acted wrongfully toward all of the class members").
I arrive at the same result reached by the majority, although at least in part, by a different route.

I join the Majority's holdings that the punitive damages award did not violate the Seventh Amendment Reexamination Clause and that the District Court correctly declined to reduce Ms. Searcy's damages under Florida's comparative fault statute.

I agree with the Majority that "a state proceeding is only entitled to full faith and credit if it complies with due process." Maj. Op. at 1352 n.3. But Graham held that the Engle jury findings were due full faith and credit because the Florida courts had found the Engle jury "actually decided" those issues. Graham, 857 F.3d at 1185. It strikes me as strong medicine for the majority to say that I "mischaracterize" Graham, especially since I am the only member of this panel who was a signatory to the majority opinion in Graham. As such, I merely state my understanding of the opinion I participated in. And if the Majority thinks we should second guess the Florida courts' judgment in that regard, I understand their approach as being inconsistent with Graham.