DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**R.J. REYNOLDS TOBACCO COMPANY,**
Appellant,

v.

**PHIL J. MAROTTA,** as Personal Representative of the Estate of **PHIL FELICE MAROTTA,** deceased,
Appellee.

No. 4D13-1703

[January 6, 2016]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jack Tuter, Judge; L.T. Case No. 07-036723 CACE (19).

Gordon James III, Eric L. Lundt and Robert Weill of Sedgwick LLP, Fort Lauderdale; and Gregory G. Katsas of Jones Day, Washington, D.C., for appellant.

Richard B. Rosenthal of The Law Offices of Richard B. Rosenthal, P.A., Miami; Philip Freidin and Randy Rosenblum of Freidin, Dobrinsky, Brown & Rosenblum, P.A., Delray Beach; and Alex Alvarez of The Alvarez Law Firm, Miami, for appellee.

CIKLIN, C.J.

In this *Engle* progeny case,[1] R.J. Reynolds Tobacco Company ("the defendant") appeals a final judgment entered in favor of Phil J. Marotta, as Personal Representative of the Estate of Phil Felice Marotta ("the plaintiff"), arguing that federal law implicitly preempts state law tort claims of strict liability and negligence based on the sale of cigarettes and that the use of the *Engle* defect finding resulted in a violation of due process. The plaintiff cross-appeals, contending that the trial court erred in precluding the jury from considering punitive damages on the products liability claim. We affirm on all issues pursuant to *Philip Morris*

---

[1] *See generally Philip Morris USA, Inc. v. Douglas,* 110 So. 3d 419, 422-25 (Fla. 2013) (providing a concise summary of *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006), and its progeny).

*USA, Inc. v. Douglas*, 110 So. 3d 419, 424 (Fla. 2013), *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006), and *R.J. Reynolds Tobacco Co. v. Ciccone*, 123 So. 3d 604 (Fla. 4th DCA 2013), *review granted*, 147 So. 3d 526 (Fla. 2014). However, we write to address the defendant's federal preemption argument, and to certify a question thereon to the Florida Supreme Court as one of great public importance.

The defendant very broadly argues that, because Congress has expressly sanctioned the sale of cigarettes, and because the practical effect of the *Engle* progeny litigation is to establish that all cigarettes are inherently dangerous and defective, strict liability and negligence claims are implicitly preempted by federal law allowing the sale of cigarettes.

This court explained federal preemption in *Liggett Group, Inc. v. Davis*, 973 So. 2d 467 (Fla. 4th DCA 2007), as follows:

> The doctrine of conflict preemption prevents state laws which conflict with federal statutes from being applied. Conflict preemption occurs where a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively or when state law is in actual conflict with federal law. Conflict preemption turns on the identification of actual conflict and not an express statement of preemptive intent. If Congress gives express sanction to an activity, the states cannot declare that activity tortious.

*Id.* at 471 (internal citations and quotation marks omitted).

"[W]hether a state law claim is preempted is dependent on the exact nature of that particular claim." *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1193 (11th Cir. 2004) (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992)). In *Cipollone*, the Supreme Court explained, "The central inquiry in each case is . . . whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion' . . . ." *Cipollone*, 505 U.S. at 523-24 (quoting 15 U.S.C. § 1334(b)). *Cipollone* addresses causes of action of failure to warn, breach of express warranty, fraudulent misrepresentation, and conspiracy to misrepresent or conceal material facts, and a plurality of the Court "found that state laws which required a showing that warnings on cigarettes should have been more clearly stated, were preempted, and the state law claims based on the manufacturer's practices of testing or research unrelated to advertising

2

were not preempted." *Davis*, 973 So. 2d at 471. Accordingly, not all tobacco claims are preempted, "only certain ones." *Id.* at 472.

Recently, in *Graham v. R.J. Reynolds Tobacco Co.*, 782 F.3d 1261 (11th Cir. 2015), the Eleventh Circuit held that *Engle* progeny strict liability and negligence claims are implicitly preempted by federal law. *Id.* at 1280. Rather than defining a legal duty or duties imposed by Florida case law with respect to strict liability and negligence claims pursuant to the test propounded in *Cipollone*, the Eleventh Circuit identifies "[t]hree aspects of that litigation [that] inform how we characterize the duty it has come to impose on cigarette manufacturers":

> First, the *Engle* class definition does not distinguish among types of smokers, types of cigarette manufacturers, or types of cigarettes. It applies across the board. The class definition thus creates a "brandless" cigarette, one produced by all defendants and smoked by all plaintiffs at all times throughout the class period.
>
> Second, the Phase I findings, given claim-preclusive effect by *Douglas* reading *Engle III*, concern conduct common to the class. . . . To avoid a due process violation, the Phase I findings must turn on the only common conduct presented at trial—that the defendants produced, and the plaintiffs smoked, cigarettes containing nicotine that are addictive and cause disease.
>
> Third, the *Douglas* causation instruction removes the need to litigate brand-specific defects in *Engle*-progeny trials altogether. Progeny plaintiffs must only prove how their addiction to cigarettes containing nicotine caused their injuries, not how the specific conduct of a specific defendant caused their injuries.
>
> Taken together, these three factors compel the conclusion that *Engle* strict-liability and negligence claims have imposed a duty on all cigarette manufacturers that they breached every time they placed a cigarette on the market. That result is inconsistent with the full purposes and objectives of Congress, which has sought for over fifty years to safeguard consumers' right to choose whether to smoke or not to smoke.

*Id.* at 1279-80. *Graham* concludes:

3

> [A]s a result of the interplay between the Florida Supreme Court's interpretations of the *Engle* findings and the strictures of due process, the necessary basis for Graham's *Engle*-progeny strict-liability and negligence claims is that all cigarettes sold during the class period were defective as a matter of law. This, in turn, imposed a common-law duty on cigarette manufacturers that they necessarily breached every time they placed a cigarette on the market. Such a duty operates, in essence, as a ban on cigarettes. Accordingly, it conflicts with Congress's clear purpose and objective of regulating—not banning—cigarettes, thereby leaving to adult consumers the choice whether to smoke cigarettes or to abstain. We therefore hold that Graham's claims are preempted by federal law.

*Id.* at 1282.

We disagree with *Graham*, and we respectfully note what we believe to be flaws in its reasoning. First, *Graham* overstates the effect of the past ten years of Florida tobacco case law by equating it to a ban on cigarette sales. As one commentator notes, "tort verdicts (which are hardly uniform), do not always arise to a state law 'standard'; sometimes they may only 'motivate an optional decision' for a defendant to behave differently." Douglas J. McNamara, *What Were They Smoking? Why the Graham Court was Wrong*, Law 360, May 14, 2015 (footnote omitted) (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 445 (2005)). "The proper [preemption] inquiry calls for an examination of the elements of the common-law duty at issue, *see Cipollone*, 505 U.S. at 524, 112 S.Ct. 2608 (plurality opinion); it does not call for speculation as to whether a jury verdict will prompt the manufacturer to take any particular action (a question, in any event, that will depend on a variety of cost/benefit calculations best left to the manufacturer's accountants)." *Bates*, 544 U.S. at 445.[2]

Additionally, *Graham* suggests that state and presumably local governments cannot ban a product that Congress has chosen to regulate. This blanket argument cannot withstand the test of experience and logic.

---

[2] *But see Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2477 (2013) (holding that state design defect claims which turn on the adequacy of a drug's warnings are preempted by federal law and noting that implied preemption is not "defeated by the prospect that a manufacturer could pay the state penalty for violating a state-law duty" (internal quotation marks and citation omitted)).

For example, numerous so-called dry counties exist throughout the United States today despite federal regulation of alcohol.

Furthermore, *Graham* relies in part on the 1965 Federal Cigarette Labeling and Advertising Act ("FCLAA"), *codified as amended at* 15 U.S.C. §§ 1331–1341, to conclude that Congress intended to preempt states from banning the sale of cigarettes. *See Graham*, 782 F.3d at 1277. In the "Congressional declaration of policy and purpose" of the FCLAA, Congress expressed its policy to ensure that "commerce and the national economy may be (A) protected to the maximum extent consistent with [the objective of adequately informing the public of the risks of smoking] and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health." 15 U.S.C. § 1331. It then imposed regulations for the *labeling* and *advertising* of cigarettes, and banned states from imposing any separate regulations on the same activities. We believe this only demonstrates an intent to prevent states from imposing differing laws on the labeling and advertising of cigarettes, which undoubtedly would have been cumbersome for cigarette companies to comply with, and would have in turn stymied interstate commerce of cigarettes. It does not, however, indicate an intent to preempt states from banning the sale of cigarettes, a state right traditionally reserved within a state's police powers, or from permitting state tort claims relating to the production and sale of cigarettes. *See, e.g., Richardson v. R.J. Reynolds Tobacco Co.*, 578 F. Supp. 2d 1073, 1077 (E.D. Wis. 2008) (holding that the FCLAA did not implicitly preempt plaintiff's strict liability claim and explaining that "Congress clearly intended to 'protect the national economy from the burden imposed by diverse, nonuniform, and confusing cigarette labeling and advertising regulations,' *Cipollone*, 505 U.S. at 514, 112 S.Ct. 2608, but did not clearly intend to extend broad immunity from common law liability to cigarette manufacturers.").

*Graham* similarly relies in part on language from the 2009 Family Smoking Prevention and Tobacco Control Act ("TCA"), 21 U.S.C. § 387, which grants the Food and Drug Administration ("FDA") authority to regulate cigarettes, but specifically prohibits the FDA from banning cigarettes. *See Graham*, 782 F.3d at 1278-79. However, it contains no such prohibition to prevent the states from banning cigarettes, if they so choose.

In fact, although the TCA expressly preempts states from regulating certain aspects of cigarette commerce such as labeling and

manufacturing,[3] it specifically acknowledges states' rights to regulate other aspects of tobacco, including a state's right to prohibit the sale of tobacco:

> Preservation of State and local authority.
>
> (a) In general
>
> (1) Preservation
>
>> Except as provided in paragraph (2)(A), *nothing in this subchapter . . . shall be construed to limit the authority of . . . a State* or political subdivision of a State . . . *to enact, adopt, promulgate, and enforce any law, rule, regulation, or other measure with respect to tobacco products that is in addition to, or more stringent than, requirements established under this subchapter*, including a law, rule, regulation, or other measure relating to or ***prohibiting the sale***, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products by individuals of any age . . . .
>
>> . . . .
>
> (b) Rule of construction regarding product liability
>
>> *No provision of this subchapter relating to a tobacco product shall be construed to modify or otherwise affect any action or the liability of any person under the product liability law of any State.*

21 U.S.C. § 387p (2009) (emphasis added).  These provisions of the TCA are curiously omitted from *Graham.*

In sum, because *Engle* progeny cases do not support a conclusion that strict product liability claims amount to a ban on the sale of cigarettes, and because federal tobacco laws expressly preserve a state's

---

[3] "No State or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this chapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products." 21 U.S.C. § 387p(a)(2)(A).

ability to regulate tobacco in ways other than manufacturing and labeling while declining to "modify or otherwise affect any action or the liability of any person under the product liability law of any State," we find no conflict between the applicable state and federal laws. Accordingly, the trial court did not err in rejecting the defendant's argument that negligence and strict liability claims are preempted by federal law.

Recognizing the Eleventh Circuit's decision to the contrary, however, we certify this latest *Engle* progeny defense as a question of great public importance:

> WHETHER FEDERAL LAW IMPLICITLY PREEMPTS STATE LAW TORT CLAIMS OF STRICT LIABILITY AND NEGLIGENCE BY *ENGLE* PROGENY PLAINTIFFS BASED ON THE SALE OF CIGARETTES.

*Affirmed; question certified.*

GERBER, J., and JOHNSON, LAURA, Associate Judge, concur.

*　　*　　*

**_Not final until disposition of timely filed motion for rehearing._**