NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

PHILIP MORRIS USA, INC., and R.J.   )
REYNOLDS TOBACCO COMPANY,   )
   )
      Appellant,   )
   )
v.   )      Case No. 2D14-5403
   )
JAMES HARRIS LOURIE, as Personal   )
Representative of the Estate of   )
Barbara Ruth Lourie, deceased,   )
   )
      Appellee.   )
_____)

Opinion filed August 10, 2016.

Appeal from the Circuit Court for
Hillsborough County; William P. Levens,
Judge.

Razvan Axente and Bonnie Daboll of
Shook, Hardy & Bacon, L.L.P., Tampa;
Geoffrey J. Michael of Arnold & Porter,
LLP, Washington, D.C.; Gregory G. Katsas
of Jones Day, Washington, D.C.; and
Charles R.A. Morse of Jones Day, New
York, New York, for Appellants.

David J. Sales of David J. Sales, P.A.,
Jupiter; Laurie Briggs of Searcy, Denney,
Scarola, Barnhart & Shipley, P.A., West
Palm Beach; Steven L. Brannock, Celene
Humphries, and Philip J. Padovano of
Brannock & Humphries, Tampa; and Brent
Bigger of Knopf/Bigger, Tampa, for
Appellee.

KHOUZAM, Judge.

In this Engle-progeny case,[1] Philip Morris USA, Inc., and R.J. Reynolds Tobacco Co. timely appeal the final judgment entered in favor of James Lourie, as personal representative of the Estate of Barbara Ruth Lourie. The tobacco company defendants argue that federal law implicitly preempts state law tort claims of strict liability and negligence for the sale of cigarettes because federal law effectively prohibits states from banning cigarette sales and the Engle Phase I findings amount to a ban on selling cigarettes. We affirm because the implied preemption argument is not only barred by res judicata but is also without merit.

I.      RES JUDICATA

"[T]he Phase I verdict against the Engle defendants resolved all elements of the claims that had anything to do with the Engle defendants' cigarettes or their conduct." Philip Morris USA, Inc. v. Douglas, 110 So. 3d 419, 432 (Fla. 2013). The Florida Supreme Court has made clear that these Phase I findings appropriately established the tobacco company defendants' common liability and are entitled to res judicata effect. Id. at 432-33 (citing Engle v. Liggett Grp., Inc., 945 So. 2d 1246, 1269 (Fla. 2006) (Engle III)). The companies are now "precluded from arguing in individual actions that they did not engage in conduct sufficient to subject them to liability." Id. This is because

> res judicata prevents *the same parties* from relitigating *the same cause of action* in a second lawsuit and "is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter

---

[1]A concise history of Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006) (Engle III), and its progeny can be found in Philip Morris USA, Inc. v. Douglas, 110 So. 3d 419, 422-25 (Fla. 2013).

> which might with propriety have been litigated and determined in that action."

Id. at 432 (quoting Engle III, 945 So. 2d at 1259). In other words, the tobacco companies cannot raise the implied preemption defense here even if they had not raised it in Engle because it could have been raised in Engle. See id.

But the tobacco companies did in fact raise this argument in Engle. When they appealed the final judgment in Engle to the Third District, they plainly challenged the Engle trial court's rulings on the ground of implied preemption:

> **A. Plaintiffs' Attacks On The Sale of Cigarettes Were Barred By A Series Of Federal Statutes**
>
> . . . .
>
> The court's rulings were erroneous. For more than 60 years, federal statutes have protected the right to sell cigarettes, even while Congress recognized that cigarettes were dangerous. Federal law thus preempts claims that selling cigarettes is tortious or otherwise improper. . . . In addition, because the sale of cigarettes is subject to federal regulation, attempts to impose contradictory requirements or prohibitions under state law are subject to at least implied preemption.

Combined Initial Brief of All Appellants other than Liggett and Brooke at 132-34, Liggett Group Inc. v. Engle, 853 So. 2d 434 (Fla. 3d DCA 2003) (Engle II) (No. 3D00-3400). The Third District agreed with the tobacco company defendants' position, specifically stating that "[b]ecause the sale of cigarettes is subject to federal regulation, attempts to impose contradictory requirements or prohibitions under state law are subject to at least implied preemption." Engle II, 853 So. 2d at 460 n.35. The Third District's decision was approved in part and quashed in part by the Florida Supreme Court in Engle III, 945 So. 2d 1246. Though the supreme court only mentioned the defendants' "preemption defense" in passing, see id. at 1273, it is clear that this defense was before the court.

And the court necessarily rejected this argument in holding that certain Phase I findings had res judicata effect. Id. at 1255, 1269 (stating that a majority of the court "concludes that it was proper to allow the jury to make findings in Phase I on Questions 1 (general causation), 2 (addiction of cigarettes), 3 (strict liability), 4(a) (fraud by concealment), 5(a) (civil-conspiracy-concealment), 6 (breach of implied warranty), 7 (breach of express warranty), and 8 (negligence)," and further explaining that "the Phase I common core findings we approved above will have res judicata effect in [individual damages] trials"). The United States Supreme Court denied certiorari, opting not to address the issue. See R.J. Reynolds Tobacco Co. v. Engle, 552 U.S. 941 (2007). Accordingly, the claim has been finally determined and cannot be raised again in Engle-progeny cases like this one.

We also conclude that barring the tobacco company defendants from raising this defense again does not violate the tobacco companies' due process rights. The supreme court has explicitly rejected the argument that "accepting the Phase I findings as res judicata violates [the tobacco company defendants'] due process rights." Douglas, 110 So. 3d at 430. Due process requires that a party must be given notice and an opportunity to be heard, and it is true that the principle of res judicata should not be applied to deny a party those rights. Id. However, here the tobacco company defendants not only had a full and fair opportunity to raise this defense but actually did raise it in Engle. Though they may disagree with the resulting final determination, there has been no violation of their due process rights.

## II.    IMPLIED PREEMPTION

We also reject the tobacco company defendants' implied preemption defense on its merits.  As a threshold issue, we note that the tobacco companies relied heavily on the Eleventh Circuit's decision in Graham v. R.J. Reynolds Tobacco Co., 782 F.3d 1261 (11th Cir. 2015), to support their implied preemption claim.  But the Eleventh Circuit has since vacated the panel opinion in Graham and granted rehearing en banc.  Graham v. R.J. Reynolds Tobacco Co., 811 F.3d 434 (11th Cir. 2016) (vacating the panel opinion and granting rehearing en banc).  So the Graham panel opinion no longer has any precedential value.  See Blank v. Bethlehem Steel Corp., 738 F. Supp. 1380, 1381 (M.D. Fla. 1990).  The reasoning in the Graham panel opinion has also been recently rejected in R.J. Reynolds Tobacco Co. v. Marotta, 182 So. 3d 829 (Fla. 4th DCA 2016), review granted, No. SC16-218, 2016 WL 934971 (Fla. Mar. 8, 2016), and Berger v. Philip Morris USA, Inc., 3:09-CV-14157, 2016 WL 2593841 (M.D. Fla. May 5, 2016).  We agree with the sound reasoning set forth in Marotta and Berger.

The tobacco company defendants argue that federal law implicitly preempts state law tort claims of strict liability and negligence for the sale of cigarettes because federal law effectively prohibits states from banning cigarette sales and the Engle Phase I findings amount to a ban on selling cigarettes.  We disagree.

The United States Supreme Court has explained that "because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action."  Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996).  So "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally

occupied,' " such as the protection of public health and safety, the court must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id. (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). Indeed, congressional purpose is the ultimate touchstone in every preemption case. Id. (citing Retail Clerks v. Schermerhorn, 375 U.S. 96, 103 (1963)). Implied preemption claims, like the one advanced here, are particularly difficult to prove because there is no express preemption provision to interpret and "a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." Chamber of Commerce of the U.S. v. Whiting, 563 U.S. 582, 607 (2011) (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 110 (1992)).

First, federal law does not prohibit states from banning cigarette sales. "Although the federal government has chosen to regulate aspects of the cigarette industry while stopping *itself* short of banning cigarettes, it did not intend to force *the states* to accept that cigarettes must remain on *their* markets." Berger, 2016 WL 2593841, at *8. The tobacco companies refer to a number of federal statutes that they claim effectively prohibit states from banning the sale of cigarettes. But this claim is belied by the federal acts themselves. For example, the Federal Cigarette Labeling and Advertising Act only prevents the states from imposing separate regulations on the labeling and advertising of cigarettes. See 15 U.S.C. § 1334(b) (2014) ("No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter."). Nothing in this Act

indicates an intent to preempt states from banning cigarette sales altogether.  Similarly, the Family Smoking Prevention and Tobacco Control Act grants the U.S. Food and Drug Administration (FDA) authority to regulate cigarettes and prohibits the FDA from banning cigarettes.  See 21 U.S.C. §§ 387a(a), 387g(d)(3) (2014).  But it does not prevent the states from banning cigarettes—indeed, it expressly preserves the states' authority to "prohibit[] the sale . . . of tobacco products."  21 U.S.C. § 387p(a)(1).  It also specifically provides that "[n]o provision of this subchapter relating to a tobacco product shall be construed to modify or otherwise affect any action or the liability of any person under the product liability law of any State."  21 U.S.C. § 387p(b).

We also note that, just as "Congress knew about the addictive and hazardous properties of cigarettes, it also surely knew about widespread tort litigation dealing with tobacco's ravaging effects on health."  Berger, 2016 WL 2593841, at *10 (citing Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 184-85 (1988), for the proposition that "[w]e generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts").  And "[y]et Congress has never manifested a preemptive impulse toward state law remedies of which it presumably knew when it acted."  Id.  Further, the tobacco companies' suggestion that state and local governments cannot ban any product that Congress has regulated "cannot withstand the test of experience and logic," Marotta, 182 So. 3d at 833, and "would represent a breathtaking expansion of obstacle preemption that would threaten to contract greatly the states' police powers," Berger, 2016 WL 2593841, at *10.  The fact that "dry counties" exist even though the federal government regulates alcohol exemplifies just how sharply the companies' position contrasts with the current state of the law.  See

Marotta, 182 So. 3d at 833.  Ultimately, we believe that even though Congress does regulate certain aspects of the sale of cigarettes, "a state's power to regulate matters of health and safety encompasses the power to regulate cigarettes, or even to ban their sale entirely."  Berger, 2016 WL 2593841, at *9.

Second, the Engle Phase I findings do not amount to a ban on selling cigarettes.  Cigarettes are sold throughout Florida, and many people still choose to purchase and smoke them.

> Had the Phase I verdict created a ban on cigarette sales, those sales would have ended two decades ago. Cigarette makers want to eat their cake and have it too. Trying to erect a purported ban on cigarette sales to evade liability, they continue to profit from their products, feeling, as they do so, no real-world constraint or restriction from the Phase I verdict. *Res ipsa loquitor*.

Berger, 2016 WL 2593841, at *8.

The argument that the Engle Phase I findings amount to a ban on the sale of cigarettes hinges on the claim that the Phase I jury's findings were overly broad, essentially determining that cigarettes are inherently defective and that cigarette manufacturers are inherently negligent.  The Graham panel opinion posited that the Engle Phase I findings created a " 'brandless' cigarette, one produced by all defendants and smoked by all plaintiffs at all times throughout the class period" and that this "imposed a duty on all cigarette manufacturers that they breached every time they placed a cigarette on the market."  Graham, 782 F.3d at 1279-80.  But the Florida Supreme Court has already rejected the claim that the Engle Phase I findings are overly broad:

> Notwithstanding our holding in Engle, the defendants attempt to avoid the binding effect of the Phase I findings by

- 8 -

arguing that they are not specific enough to establish a causal link between their conduct and damages to individual plaintiffs who prove injuries caused by addiction to smoking the Engle defendants' cigarettes. But, by accepting some of the Phase I findings and rejecting others based on lack of specificity, this Court in Engle necessarily decided that the approved Phase I findings are specific enough. . . .

Accordingly, we reject the defendants' argument that the Phase I findings are too general to establish any elements of an Engle plaintiff's claims . . . .

Douglas, 110 So. 3d at 428-29.

Indeed, the Engle I findings were much more specific than the tobacco company defendants and the Graham panel suggest. Not every tobacco company selling cigarettes in Florida was a defendant in Engle, only smokers who had suffered certain specific harms are part of the class, and the jury determined whether the conduct at issue occurred during certain time periods. See Verdict Form for Phase I (completed), Engle v. RJ Reynolds Tobacco Co., No. 94-08273 CA-22 (Fla. 11th Cir. Ct. Nov. 6, 2000); see also Berger, 2016 WL 2593841, at *7-8. The companies were not held liable for simply placing cigarettes on the market or the inherent characteristics of cigarettes. Rather, based on evidence that the companies had manipulated the nicotine levels in their cigarettes to make them more addictive and manufactured cigarettes with filters that increased the cigarettes' inherently deleterious effects, the companies were found liable for placing cigarettes on the market that were defective and unreasonably dangerous. They were also found liable for failing to exercise a degree of care that a reasonable cigarette manufacturer would exercise under like circumstances—a standard that assumes cigarettes could be sold in a reasonable manner. Accordingly, we reject the tobacco company defendants' "characterization of the Phase I liability

findings as being based on nothing more than the inherent properties of cigarettes," Berger, 2016 WL 2593841, at *8, and with it the claim that the Engle Phase I findings operate as a ban on the sale of cigarettes.

      Affirmed.


BLACK and SALARIO, JJ., Concur.